344 So.2d 964 (1977)
STATE of Louisiana
v.
Rosell PALMER.
No. 58630.
Supreme Court of Louisiana.
April 11, 1977.
*965 Charles B. Peatross, S. Judd Tooke, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Charles R. Lindsay, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
An April 8, 1975 indictment by the Caddo Parish Grand Jury charged that Jimmy Ray Johnson, John L. Davis and Rosell Palmer murdered Thomas Williams on March 6, 1975 while engaged in the perpetration of armed robbery, contrary to Article 30 of the Criminal Code.[1] The indictment was later dismissed as to Johnson and Davis, who appeared at Palmer's trial as witnesses for the State. Palmer was tried, convicted of second-degree murder under a responsive verdict, La. Code Crim.Pr. arts. 809, 814, and sentenced to be imprisoned at hard labor for life without benefit of parole, probation or suspension of sentence for forty years. La.Crim.Code art. 30.1 (1976).
*966 On motion of the defendant, the sentence was thereafter amended to life imprisonment without benefit of parole, probation or suspension of sentence for twenty years, in lieu of forty years, to conform with the penalty provisions in effect at the time of the commission of the offense. La.Crim. Code art. 30.1 (1973).[2] On this appeal eight assignments of error are argued.

Assignment 1
Prior to trial defendant filed a motion to quash the indictment on the ground that Article 30 of the Criminal Code was unconstitutional. The motion alleges that Article 30 violates the Fourteenth Amendment to the United States Constitution by denying due process of law and equal protection of the law; in denying the basic rights guaranteed under the Eighth Amendment to the United States Constitution prohibiting cruel and unusual punishment; and by denying due process of law in its discriminatory application against blacks and males.
In argument the defense announces that the discussion on this assignment is a preface to Assignments 2, 3 and 4, the premise being that the decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 246 (1972), striking down the death penalty, was a substantive decision reprobating the death penalty. He continues by pointing out that the decision in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), again struck down Louisiana's death penalty statute, which had been amended in the interim between Furman and Roberts. Act 109 of 1973. Roberts found constitutionally infirm the procedure for imposition of the death penalty prescribed by the amended Article 30 under which defendant was prosecuted. Therefore, the Court annulled the sentence of death but allowed the conviction to stand. See State v. Jenkins, 340 So.2d 157 (La. 1976) and State v. McDaniel, 340 So.2d 242 (La. 1976). Also, Roberts attacked the "methodology" of Louisiana's responsive verdict system, according to defendant's argument.
No argument is made relating to the discriminatory application of Article 30, and no evidence was adduced to support the allegation.
With this preface, defendant proceeds to argue Assignments 2, 3 and 4.

Assignments 2, 3 and 4
The death penalty provision of Article 30 of the Criminal Code was amended by Act 109 of 1973 in an effort to conform with the decision in Furman. The amendment changed the former discretionary statute into a wholly mandatory one, requiring that the death penalty be imposed whenever the jury found the defendant guilty of the newly described crime of first-degree murder. Defendant was tried under the article as thus amended. The death penalty prescribed in this amended version of Article 30 was in turn held to be unconstitutional by the decision in Roberts, at a time subsequent to this prosecution. Roberts held that the mandatory death penalty prescribed in Article 30 was unconstitutional and the death penalty imposed in Roberts was set aside while the conviction was allowed to stand.
Defendant contends the Roberts decision also stands for the proposition that Louisiana's "unique system of responsive verdicts," La. Code Crim.Pro. arts. 809, 814, was declared unconstitutional by this language in the opinion:
"Second, Louisiana employs a unique system of responsive verdicts under which the jury in every first-degree murder case must be instructed on the crimes of *967 first-degree murder, second-degree murder, and manslaughter and must be provided with the verdicts of guilty, guilty of second-degree murder, guilty of manslaughter, and not guilty. See La. Code Crim.Proc.Ann., Arts. 809, 814 (Supp. 1975); State v. Cooley, 260 La. 768, 771, 257 So.2d 400, 401 (1972)." Roberts, 428 U.S. p. 332, 96 S.Ct. p. 3006.
This passage from the Roberts decision is not a holding of the Court. It is merely the Court's reference to the second of two major differences between the Louisiana and North Carolina statutes governing first-degree murder cases, the Court pointing out that, by contrast, in North Carolina instructions on lesser included offenses must have a basis in the evidence adduced at the trial. This statement in the Roberts opinion was employed by the Court in reasoning that Louisiana's mandatory death sentence statute violates the Eighth and Fourteenth Amendments and must be set aside. It was not the Court's intention in so doing, as we view the opinion, to hold that Louisiana's responsive verdict statutes are unconstitutional. These statutes were referred to only insofar as they might have an effect upon the imposition of a death penalty. Since no death penalty is involved in the case at bar, the quoted reference to responsive verdicts in Roberts does not apply here.
An attack upon the constitutionality of the responsive verdict statute was rejected by this Court in State v. James, 339 So.2d 741, in November 1976. This decision was rendered four months after Roberts. It was decided on the basis of a charge of first-degree murder under Article 30(4) of the Criminal Code where the defendant was convicted of second-degree murder. Other decisions since Roberts have recognized the viability of our responsive verdict statutes. E.g. State v. Finley, 337 So.2d 1151 (La. 1976); State v. Turner, 337 So.2d 1090 (La. 1976) and State v. McCoy, 337 So.2d 192 (La.1976).
If the foregoing quotation from the decision in Roberts does not have the effect of invalidating Louisiana's responsive verdict statutes, then, defendant asserts, the following language of the Roberts decision renders that statute constitutionally infirm:
"Under the current Louisiana system, however, every jury in a first-degree murder case is instructed on the crimes of second-degree murder and manslaughter and permitted to consider those verdicts even if there is not a scintilla of evidence to support the lesser verdicts. See La. Code Crim.Proc.Ann. Arts. 809, 814 (Supp. 1975). And, if a lesser verdict is returned, it is treated as an acquittal of all greater charges. See La. Code Crim. Proc.Ann. Art. 598 (Supp.1975). This responsive verdict procedure not only lacks standards to guide the jury in selecting among first-degree murderers, but it plainly invites the jurors to disregard their oaths and choose a verdict for a lesser offense whenever they feel the death penalty is inappropriate." Roberts, 428 U.S. p. 334, 96 S.Ct. p. 3007.
Our answer to this contention is again that the quoted language has reference to the effect of the responsive verdict on a death penalty, a fact situation not present in the instant case. While the effect of the responsive verdict on the imposition of the death penalty was a factor which may have induced the Roberts Court to invalidate the death penalty, the responsive verdict statutes were not declared unconstitutional.
The thrust of the Roberts decision was the Court's condemnation of the mandatory character of the death penalty; the decision did not purport to affect responsive verdicts in non-capital cases. It is worthy of note that subsequent to the Roberts decision the legislature again amended Article 30, authorizing the death penalty in accordance with the recommendation of the jury. Act 657 of 1976 and Act 694 of 1976 (La. Code Crim.Proc. art. 905). However, apparently feeling that the responsive verdict statutes were not affected by Roberts, Articles 809 and 814 of the Code of Criminal Procedure were not amended by the Legislature.
Therefore, insofar as the contention in Assignment 2 avers that the foregoing proposition was a basis for quashing the indictment, that assignment has no merit.
*968 For the same reasons the claim in Assignments 3 and 4, that the foregoing arguments advanced by the defendant were grounds for invalidating the verdict, are also without merit.

Assignment 5
Defendant complains that the bill of particulars furnished by the District Attorney in response to his motion did not advise him of possible rewards of leniency offered to codefendants Johnson and Davis or of the existence of the fingerprints of Johnson or Davis in or around the apartment of the victim Williams where the killing took place.
No showing is made, and no part of the record is referred to, which would support a finding that rewards of leniency were offered to Johnson and Davis. The District Attorney categorically and emphatically denies that rewards of leniency were offered or given. Nothing in this record even remotely suggests that the District Attorney acted improperly in this respect.
The existence of the latent fingerprints of Johnson and Davis in the Williams apartment was not favorable or exculpatory evidence to which the defense was entitled. And the defense does not contend to that effect or otherwise inform the Court what the effect of such a nondisclosure would be upon defendant. This evidence tended to implicate Johnson and Davis, not defendant. Defendant, therefore, was not entitled to evidence which was not essential to his defense. State v. Hudson, 253 La. 992, 221 So.2d 484 (1969).

Assignments 6 and 7
For the first time in these proceedings defendant asserts in brief before this Court that the verdict of second-degree murder must be set aside because the State failed to prove either 1) specific intent to kill or inflict great bodily harm, or 2) that a death occurred during the perpetration of an armed robbery, both asserted to be essential elements of the crime charged, elements which are required to be proved to support a conviction.
These alleged errors are raised for the first time on appeal. No motion for a new trial was presented alleging these arrors, nor were these contentions raised in the motion in arrest of judgment. These assignments of error are therefore not properly presented for review and will not be considered. State v. Jamerson, 341 So.2d 1118 (La.1977); Cf. State v. Ackal, 290 So.2d 882 (La.1974).

Assignment 8
In defendant's motion in arrest of judgment it is alleged that the indictment charged that defendant committed the murder "on or about the 6th day of March 1975," whereas all evidence at the trial was to the effect that Williams was murdered on March 7, 1975. For this reason, the motion alleges, the indictment is substantially defective and the judgment should be arrested. The trial judge denied the motion, and that ruling is assigned as error.
In its amended bill of particulars the State set forth that the exact time of the offense charged was unknown, but it is believed to have occurred during the late-night hours of March 6, 1975 or the early morning hours of March 7, 1975. Inasmuch as the defense concedes that the evidence showed convincingly that the offense was committed on March 7, 1975, the information supplied in the bill of particulars prevented any surprise or prejudice which may otherwise have occurred because of the incompatibility between the allegation of the indictment and the evidence. Defendant was not misled. Moreover, at no time during the course of the trial was a defense objection raised to evidence relating to the date and time of the offense. La. Code Crim.Pro. art. 468; State v. Glover, 304 So.2d 348 (La.1974). The motion in arrest of judgment was properly denied.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] La.Crim.Code art. 30 (1973):

"First degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated rape or armed robbery; or
(2) When the offender has a specific intent to kill, or to inflict great bodily harm upon, a fireman or peace officer who was engaged in the performance of his lawful duties; or
(3) Where the offender has a specific intent to kill or to inflict great bodily harm and has previously been convicted of an unrelated murder or is serving a life sentence; or
(4) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person;
(5) When the offender has specific intent to commit murder and has been offered or has received anything of value for committing the murder.
For the purposes of paragraph (2) herein, the term peace officer shall be defined and include any constable, sheriff, deputy sheriff, local or state policeman, game warden, federal law enforcement officer, jail or prison guard, parole officer, probation officer, judge, district attorney, assistant district attorney or district attorneys' investigator.
Whoever commits the crime of first degree murder shall be punished by death."
[2] La.Crim.Code art. 30.1 (1973):

"Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill.
Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation or suspension of sentence for a period of twenty years."