461 So.2d 1201 (1984)
STATE of Louisiana
v.
Glenn Earl BESSARD.
No. CR84-280.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1984.
Rehearing Denied January 17, 1985.
*1202 J. Nolan Sandoz, Sandoz, Sandoz & Schiff, Bertrand DeBlanc, Sr., Abbeville, for defendant-appellant.
Calvin E. Woodruff, Asst. Dist. Atty., Abbeville, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and KNOLL, JJ.
DOMENGEAUX, Judge.
The defendant, Glenn Earl Bessard, was charged by a bill of information with the crime of attempted first degree murder, a violation of La.R.S. 14:27 and 14:30.
*1203 On February 17, 1983, a written plea of not guilty was entered by defendant's retained counsel, and on April 27-29 the defendant was tried before a twelve person jury and found guilty as charged by a 10-2 vote.
On December 1, 1983, after a hearing, the court denied a motion for a new trial. On January 30, 1984, the defendant was sentenced to serve a term of fifteen years in the custody of the Louisiana Department of Corrections.

FACTS:
The defendant's conviction arose from the attempted shooting of Officer Dan Curtsinger of the Abbeville Police Department on March 8, 1981, at the Abbeville Police Station.
According to the testimony of Officer Dalton Toups, during the evening hours of March 8, 1981, police officers Dan Curtsinger, Dalton Toups, Danny Theall and Mickey Toups responded to a call to go directly from the Abbeville Police Station to the Tearoom Lounge, located on the corner of Graceland and Miles in the city of Abbeville. They were responding to a call concerning a fight at the Tearoom Lounge. Upon arrival, they saw the defendant outside, walking into the Tearoom carrying a baseball bat. After entering the Tearoom Lounge, the officers talked to the proprietor concerning a fight between the defendant and Joseph "Cucumber" Pitre, which had taken place earlier.
Officer Theall then asked the defendant for the baseball bat, the defendant gave it to him and then walked out of the bar. The officers followed him outside and told him he was under arrest, the defendant mumbled something and walked away. The officers followed him and told him to stop because he was under arrest. The defendant continued walking away, the officers then grabbed him and the defendant struggled, but was finally handcuffed. The defendant then refused to enter the police car so he was forced to bend over and be pulled in by the handcuffs.
At the police station he was taken to the booking room, where the incident occurred. In the booking room his handcuffs were removed and he was asked to sit down. The defendant refused to sit down. The officers asked him to be seated a second time. The defendant responded by slapping the chair away and threatening to kill Officer Curtsinger.
A scuffle then ensued and the defendant momentarily broke free from the officers. They finally regained control of the defendant, who was restrained in a sitting position on the floor. Officer Dalton Toups was directly behind the defendant trying to restrain him, while Officer Curtsinger was directly in front of the defendant trying to restrain his feet.
At this point the defendant reached behind him and pulled a revolver from the holster of Officer Toups. The defendant then pointed the gun directly ahead at Officer Curtsinger. The muzzle of the gun was about fifteen (15) inches from the chest of Officer Curtsinger. The defendant had his finger on the trigger and the hammer was partially pulled back, indicating the defendant was attempting to fire it. Officer Curtsinger then grabbed the cylinder of the gun to keep it from firing, while trying to turn the weapon away from himself. The officers then managed to twist the weapon out of the defendant's hands. The defendant was then laid face down on the floor.
The defendant specifies four assignments of error on this appeal.

ASSIGNMENT OF ERROR NO. 1:
The defendant argues that the trial court erred in denying defendant a continuance or reasonable time to procure new counsel to replace his already privately retained counsel, Patricia Thomas. At the time this motion was made, all the evidence had been presented to the jury and the court was awaiting closing arguments.
The defendant relies on Article 1, Section 13 of the Constitution of Louisiana of 1974 which states in part:
"... In a criminal prosecution an accused shall be informed of the nature and cause of the accusation against him. At *1204 each stage of the proceeding, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment ..."
The defendant contends that he was entitled to the counsel of his own choosing at every stage of the proceedings.
During the trial, after presentation of the evidence, but before closing arguments, the defendant no longer desired the representation of his retained counsel, Patricia Thomas. Although the defendant cites no case authority, he argues that La. Const. Art. I, § 13 allows a defendant to obtain a mandatory continuance once the trial proceedings have begun.
The Louisiana Supreme Court, in State v. Leggett, 363 So.2d 434 at 436 (La.1978), has addressed this precise issue. In Leggett, the Court stated that while both federal and state constitutions provide that the accused has the right to counsel of his own choosing to defend him on a criminal charge, this right does not permit arbitrary action which obstructs orderly procedures in the courts. The Supreme Court in Leggett further states:
"... the right to choose one's attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system. There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. Once the trial day has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial judge ..." 363 So.2d 434, at 436.
This rule should be followed in the present case.
In the case at hand, defendant's motion for continuance or reasonable time to procure another attorney was made after the presentation of the evidence to the jury. This is not an appropriate stage for the defendant to demand a continuance to procure another attorney. In State v. Austin, 258 La. 273, 246 So.2d 12 (1971), the Supreme Court stated:
"To permit the accused to discharge his court appointed counsel on the day of trial without any showing of incompetence and without having a privately retained attorney present to take his place, would be to permit the defendant to choose which lawyer the court must appoint to defend him. We are not aware of any basis in law for such a claim upon the State or upon members of the bar."
In the present case, the defendant waited until all the evidence was presented to the jury and closing arguments were about to begin. In Austin, the Court found that the first day of trial was too late a stage to discharge an attorney. Clearly then, once the trial has proceeded to closing argument and all the evidence is in, the defendant has no mandatory right to a continuance to look for a new attorney. Once the trial has begun, the question of withdrawal of counsel rests entirely within the discretion of the trial judge. State v. Cousin, 307 So.2d 326 (La.1975); State v. St. Amand, 274 So.2d 179 (La.1973). As a result, the trial court in the present case had the discretion to allow or deny defendant a reasonable time to procure another attorney.
The record of the trial court indicates that the Judge called defendant's counsel, Patricia Thomas, to the witness stand and questioned her about her representation of the defendant. Through this questioning, the court determined that Patricia Thomas had adequately and competently represented the defendant. The court then ordered defendant's counsel to continue the defense of her client.
The defendant specifically argues that the defense counsel's failure to call witness Junius Lewis to the stand should be grounds for the court to allow him a reasonable time to hire a new attorney. This is a matter of trial strategy on the part of the defense counsel. The court determined this was a reasonable strategy considering *1205 the lack of credibility of the witness and the fact he had not seen the attempted shooting.
This strategy move did not reflect negatively on the competency of defendant's counsel as viewed by the court. As a result, it was clearly within the discretion of the court to deny defendant extra time to procure another attorney.
Consequently, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:
The defendant contends that the trial court erred in denying the motion for a new trial based on the contention that the verdict was contrary to the law and the evidence in that there was no evidence whatsoever presented of two essential elements of the offense charged, to-wit: an overt act tending directly toward the attempted murder of Officer Curtsinger and a specific intent to kill or inflict great bodily harm on Officer Curtsinger.
The crime for which defendant was convicted is attempted first degree murder, which is defined in La.R.S. 14:27 and La. R.S. 14:30 as follows:
"§ 27. Attempt
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
D. Whoever attempts to commit any crime shall be punished as follows:
(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not more than fifty years.
§ 30. First degree murder.
First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties."
Specifically, the defendant asserts that there was no evidence presented of two essential elements of the crime of attempted first degree murder: (1) an overt act tending directly toward the accomplishment of the crime and (2) a specific intent on the part of the defendant to kill or inflict great bodily harm.
The standard of review to be applied in appellate review of the issue of sufficiency of the evidence to support a conviction is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty.[1]Jackson v. Virginia, *1206 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Austin, 399 So.2d 158 (La.1981).
At trial, extensive evidence was presented showing that the defendant, while refusing to be seated for booking procedures at the Abbeville Police Station, attempted to punch Officer Curtsinger. This started a scuffle between defendant and four police officers. During this scuffle the defendant pulled a revolver from the holster of an officer trying to restrain him, pointed it at Officer Curtsinger's chest and attempted to fire the weapon.
The State presented direct testimonial evidence from the four police officers involved in the scuffle. Dalton Toups, the officer who was wearing the gun in his holster when the defendant grabbed it testified that while he and the three other officers were trying to calm down the defendant by restraining him in a sitting position on the floor, the defendant reached around behind, pulled Officer Toups' revolver from its holster, and pointed it directly at Danny Curtsinger. Officer Toups further testified that the defendant tried to pull the trigger because his finger was on the trigger and the hammer was pulled back. At this time the weapon was no more than 15 inches from Officer Curtsinger with the muzzle pointed directly at Officer Curtsinger's chest.
Officer Dan Curtsinger also testified that the defendant grabbed Officer Toups' revolver and pointed it directly at his chest while attempting to pull the trigger.
Mickey Toups, who was a police officer at the time of this incident also testified that he saw the defendant holding the gun, pointing it directly at Dan Curtsinger's chest. The defendant had his finger on the trigger and the hammer was pulled back.
In view of this extensive, direct testimonial evidence of Dalton Toups, Dan Curtsinger and Mickey Toups, it appears that when it is viewed in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the defendant committed an overt act in an attempt to murder Dan Curtsinger, a police officer engaged in the lawful performance of his duties.
The defendant also contends that the State did not present any evidence to prove that the defendant had the specific intent to kill Officer Curtsinger.
La.R.S. 14:10(1) states:
"§ 10. Criminal intent
Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Specific intent is a state of mind and can be proven directly as a fact or it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Boyer, 406 So.2d 143 (La. 1981); State v. Daigle, 440 So.2d 230 (La. App. 3rd Cir.1983), writ denied, 444 So.2d 123 (La.1984).
The record of the trial court includes direct testimonial evidence that the defendant told Dan Curtsinger he was going to kill him. Curtsinger testified that the defendant said he was going to kill him.
Mickey Toups also testified that he heard the defendant threaten to kill Officer Curtsinger.
Officer Dalton Toups also testified that he had heard the defendant tell Officer Curtsinger "I'm going to kill you."
At the time defendant was making this threat, he was pointing the revolver directly at Curtsinger and was attempting to pull the trigger when the officer grabbed the gun. In view of this direct testimonial evidence, it appears that when it is viewed in a light most favorable to the prosecution, any rational trier of fact could have found that the defendant had the specific *1207 criminal intent to murder Officer Dan Curtsinger while he was engaged in the lawful performance of his duties.
In summary, considering the evidence presented at trial in the instant case, when viewed in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that by grabbing the revolver and attempting to shoot Officer Curtsinger, the defendant not only committed an overt act tending directly toward the attempted murder of Officer Curtsinger, but also had the specific intent to kill or cause great bodily harm.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3:
The defendant contends that his personal absence at arraignment while his retained counsel entered a written plea of not guilty invalidates the entire proceedings according to the case of State v. Pope, 214 La. 1026, 39 So.2d 719 (1949). This argument is totally without merit. Article 555 of the Louisiana Code of Criminal Procedure states:
"Art. 555. Waivers
Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty."
This article has been followed in several cases. In State v. Sears, 298 So.2d 814 (La.1974), the Louisiana Supreme Court stated:
"It is true every defendant has a right to be arraigned. C.Cr.P. 551. However, where a defendant enters upon trial without objecting to the defect, he is deemed to have waived his right under La.C.Cr.P. Art. 555.... Moreover, the defendant does not contend nor show that any prejudice resulted from the entering of the plea of not guilty."
In the instant case, on February 17, 1982, the defendant's retained counsel waived formal arraignment and entered a written plea of not guilty. The minutes further reflect that the defendant and his counsel proceeded to trial on April 27, 1983, without making any objection to defendant's absence at the arraignment. There was testimony in the hearing on a motion for new trial that the defendant had told his retained counsel, Patricia Thomas, what he was charged with before she entered the plea of not guilty.
Applying La.C.Cr.P. Art. 555 and State v. Sears, 298 So.2d 814 (La.1974), the defendant has waived his right to object to any irregularities in the arraignment.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4:
The defendant contends that the State used peremptory challenges to systematically exclude three black persons from serving on the petit jury and claims this procedure has been used over a period of time in Verimilion Parish to deny black defendants equal protection of the laws according to Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
The Louisiana Supreme Court has addressed this particular issue in State v. Francis, 403 So.2d 680 (La.1981). In Francis, the Court examined Swain v. Alabama, supra. In Swain, the United States Supreme Court held that a showing by the defense that peremptory challenges were used to exclude members of a minority in a particular case was not sufficient to establish a violation of the due process clause of the Fourteenth Amendment.
In Francis, the Court stated:
"To present a constitutional question, the defendant must show systematic exclusion of the minority by the state over a period of time through the use of peremptory challenges. The record must show with `[some] acceptable degree of clarity ... when, how often, and under what circumstances the prosecutor alone has been responsible for striking [the *1208 minority].' 380 U.S. at 224, 85 S.Ct. at 838, 13 L.Ed.2d at 775."
In the present case, the defendant has failed to demonstrate that there has been a systematic exclusion of blacks from the petit jury over a period of time. During the hearing on a motion for new trial, the only evidence defendant presented of systematic exclusion of blacks from the petit jury was the testimony of defense counsel Patricia Thomas. Thomas testified that she was involved in one other case in which blacks were peremptory challenged, but she could not recall how many. Other than the testimony of Patricia Thomas, the defense did not present any evidence of the systematic exclusion of black persons from juries in Vermilion Parish or the State of Louisiana. Consequently, the defendant fails to meet the requirements of Swain which places the burden on the defendant to show systematic exclusions of a minority from serving on juries over a period of time.
This assignment of error is without merit.
For the above and foregoing reasons the conviction and sentence of the defendant is affirmed.
AFFIRMED.
NOTES
[1] Although reviewing courts are obliged to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second guessing" the triers of fact. See State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983), concurring opinion at 1321, and State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983), concurring opinion at 223, writ denied, 444 So.2d 1241 (La.1984).