572 So.2d 255 (1990)
STATE of Louisiana
v.
Larry DONAHUE.
No. 90 KA 0040.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
Rehearing Denied January 18, 1991.
*256 Clayton M. Perkins, Jr., St. Francisville, for defendant-appellant.
George H. Ware, Jr., Dist. Atty., Clinton, for plaintiff-appellee.
Before SAVOIE, CRAIN and FOIL, JJ.
CRAIN, Judge.
Larry Donahue was charged by bill of information with attempted first degree murder of West Feliciana Parish Sheriff W.M. Daniel, a violation of LSA-R.S. 14:27 and 14:30 A(2). Defendant pled not guilty, was tried by jury and found guilty as charged. Thereafter, the state filed a multiple offender bill of information charging defendant as a habitual felony offender. At the conclusion of the habitual offender enhancement hearing which followed, defendant was adjudged a Third Felony Habitual Offender; he was sentenced to imprisonment at hard labor for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. Defendant has appealed, urging three assignments of error:
1. The state failed to prove the elements of the instant charge beyond a reasonable doubt.
2. The trial court erred by denying defendant's requested jury instruction.

*257 3. Because defective evidence was admitted at the habitual offender hearing, defendant was erroneously adjudged a multiple offender.
The trial testimony of Sheriff W.M. Daniel reveals the following. On the morning of May 27, 1988, Daniel responded to a call concerning a suspicious man who was using a telephone at West Feliciana Parish High School. Upon receiving the call, Daniel immediately drove to the school in his truck.
When he arrived at the school, Daniel observed defendant exit one of the school's buildings. Directly behind defendant were Joe Wells, the school principal, and two assistant school principals, Rodney A. Lemoine, Jr., and Robert Ward.
While still inside his truck and from a distance of about one hundred feet, Daniel observed defendant raise his shirt and pull a pistol. Immediately, Daniel jammed the brakes of his truck and began exiting the truck with his shotgun. In exiting the truck, Daniel failed to put the truck's transmission in park or neutral. The truck continued to roll, struck a parked car, and then stalled. While Daniel was still exiting the truck and was in a standing position with the truck's door open and his head above the door, defendant fired the first of three shots from the pistol he had pulled. Defendant fired the first shot, while he was apparently running for cover, with the pistol pointed directly at the sheriff. At the time the first shot was fired, Daniel was about fifteen to twenty yards from defendant.
Defendant then ran around the passenger side of the sheriff's truck and got behind a car that was parked beside the truck. The sheriff remained behind his truck (apparently the driver's side). With the truck and the car between defendant and Daniel, defendant fired the second and third shots. In doing so, defendant looked through the car's window at the sheriff before rising and firing the pistol over the top of the car with the gun "angled down" in the direction of the sheriff.
After defendant fired his third shot, there was some hesitation. Daniel told defendant to drop his gun and come out. Defendant then told the sheriff to drop his gun. Daniel replied that he was the sheriff. Defendant asked to see Daniel's badge. When the sheriff displayed his badge, defendant immediately threw down his pistol, raised his hands and surrendered.
Daniel immediately went around the car where defendant was, cuffed defendant and told him he was under arrest. After further investigation, the sheriff learned that defendant was an escapee from Louisiana State Penitentiary at Angola.
During this shooting incident, the sheriff chose not to fire the pistol or the shotgun with which he was armed. The sheriff explained that to do so he would have had to shoot toward the school building, and he did not know who else might have been in the line of fire.
The sheriff testified that he was definitely in fear of being struck by a bullet. However, none of the three shots fired by defendant nor any flying glass, metal or other object actually hit the sheriff, and no one was injured during the incident.

ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant submits that the state failed to prove the essential elements of attempted first degree murder beyond a reasonable doubt.
Initially, we note that the record does not reflect that defendant filed a motion for post verdict judgment of acquittal. In order to challenge a conviction on the basis of insufficiency of the evidence, defendant should have proceeded by way of a motion for post verdict judgment of acquittal. See LSA-C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard is that the appellate court must determine that the evidence, *258 viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier-of-fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984). The standard has been codified in LSA-C.Cr.P. art. 821.
LSA-R.S. 14:27 A provides:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purposes.
LSA-R.S. 14:30 A(2) provides:
First degree murder is the killing of a human being:
* * * * * *
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;[1]
* * * * * *
The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Jarman, 445 So.2d 1184, 1189 (La.1984); State v. McCue, 484 So.2d 889, 892 (La. App. 1st Cir.1986). Thus, in order to commit attempted first degree murder under the circumstances set forth in LSA-R.S. 14:30 A(2) and 14:27, the offender must possess the specific intent to kill a person who is a peace officer engaged in the performance of his lawful duties.
Intent, absent an admission of such by a defendant, must necessarily be proven by inferences from surrounding facts and circumstances. State v. Hicks, 554 So.2d 1298, 1302 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1374 (La.1990). In the instant case, defendant made no such admission. Thus, it was necessary that the state prove this essential element of the crime by circumstantial evidence. The rule regarding the use of circumstantial evidence is contained in LSA-R.S. 15:438. This rule restrains the fact finder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove, and then to convict only if every reasonable hypothesis of innocence is excluded. State v. Lilly, 468 So.2d 1154, 1158 (La.1985); State v. Hicks, 554 So.2d at 1302.
Herein, the sheriff's testimony showed that defendant fired three shots in the direction of the sheriff. According to the sheriff, when the shots were being fired, the pistol defendant used was pointed in Daniel's direction as if defendant was trying to shoot him rather than only frighten him. In that regard, the sheriff testified that during the incident he was definitely in fear of being struck by a bullet and that he was in fear for his life.
Several eyewitnesses gave testimony at trial which corroborated Daniel's testimony that defendant's shots were directed at him. Those witnesses included Donald Ray Coates, Donald R. Milton, Rodney A. Lemoine, Jr., and Joe Wells. Although he was unsure of the number of shots fired, Coates stated that he was certain defendant was pointing the gun at the sheriff. During his testimony, Milton indicated that defendant aimed the pistol toward the sheriff's truck, moving it so as to track the truck as the sheriff arrived at the school. Lemoine testified that he saw defendant shoot twice in the direction of the sheriff and that he felt that defendant was shooting at the sheriff. Wells stated that, although he heard three shots, he saw only the first shot defendant fired. At the time of the first shot, the gun was pointed in the direction of the sheriff.
Viewing all the evidence in the light most favorable to the state, any rational trier-of-fact could have found that the state proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that defendant had the specific *259 intent to kill a human being, who was a peace officer engaged in the performance of his lawful duties, and that defendant performed an act(s) tending directly toward accomplishing his objective. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. TWO:
By means of this assignment, defendant asserts that the trial court erred by denying his requested jury instruction.
The record reflects that, immediately after the jury retired to begin its deliberations, the trial court stated for the record that it had declined to give defense counsel's jury instruction number one; the court further stated that it was reserving defense counsel's objection to its ruling. The record reveals that defendant's written jury instruction number one was as follows:
The defense requests that since there was no touching of the victim in this case, but that the victim was in reasonable apprehension of receiving a battery, that aggravated assault should be a responsive verdict herein, 14:37. The elements of aggravated assault and assault 14:36, should be read to the jury:
LSA-C.Cr.P. art. 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury.[2] Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
(Footnote added).
In order for the state or defendant to assert the right to have a special charge given to the jury, LSA-C.Cr.P. art. 807 requires that the charge be complete, so that the trial court may use the charge without qualification, limitation or explanation. See State v. Gonzales, 258 La. 103, 245 So.2d 372, 374 (1971).
As phrased, defendant's requested jury instruction number one was clearly incomplete and could not be given without explanation. See and compare State v. Gonzales, 245 So.2d at 374. Thus, the trial court properly denied the requested charge.
Additionally, while conceding (in brief) that a verdict of guilty of aggravated assault is not one of the responsive verdicts set forth in LSA-C.Cr.P. art. 814 A 2, defendant asserts that LSA-C.Cr.P. art. 814 A 2 unconstitutionally violates his rights to due process and equal protection under Article I, Sections 2 and 3, of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution.[3]
We find defendant's assertion that the provisions of LSA-C.Cr.P. art. 814 A 2 are unconstitutional to be meritless. Our Supreme Court has repeatedly upheld the constitutionality of Louisiana's responsive verdict system. See State v. Matthews, 380 So.2d 43, 45 (La.1980) and the cases cited therein.[4] Similarly, we find no abridgment *260 of defendant's constitutional rights in this case.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. THREE AND PATENT SENTENCING ERROR:
By means of this assignment, defendant challenges his adjudication as a habitual felony offender. He claims that he was erroneously adjudicated to be a multiple offender because the state failed to introduce evidence proving that he had been advised of and had waived his Boykin rights when he entered a guilty plea to a predicate felony offense. However, we find defendant's adjudication as a Third Felony Habitual Offender to constitute error patent on the face of the record. LSA-C.Cr.P. art. 920(2).
A bill of information charging defendant as a Second Felony Habitual Offender was filed after the jury convicted defendant. The multiple offender bill charged that defendant was previously convicted of armed robbery on May 15, 1980,[5] in Orleans Parish and that on June 20, 1980, defendant was adjudged a Second Felony Habitual Offender and sentenced to a term of one hundred and ninety-eight years at hard labor for the armed robbery conviction.
At the hearing relative to the instant habitual offender bill of information, the state began its presentation of evidence by introducing State Exhibit S-1 into evidence. S-1 included certified copies of the bill of information charging the May 15, 1980, armed robbery conviction of Larry L. Donahue in Criminal District Court of Orleans Parish under docket number 271-682; the multiple offender bill of information upon which Larry L. Donahue's adjudication and sentence for the armed robbery conviction was based; and the minute entries of May 15, 1980, and June 20, 1980, reflecting Larry L. Donahue's conviction and sentence for the armed robbery. S-1 also included an uncertified transcript of the June 20, 1980, sentencing proceeding.
After introducing S-1 into evidence, the state presented the testimony of Mary Cockerham, an employee of the Louisiana State Penitentiary Records Office. Cockerham stated that she is custodian of the inmate records and that she brought Larry L. Donahue's prison records to court. She testified that those records contained a photograph and the fingerprints of Larry L. Donahue. The state introduced the photograph (S-2) and the fingerprints (S-3) into evidence.
The state then introduced the testimony of Joanne Robeau, a fingerprint technician with the Bureau of Identification, who qualified and was accepted by the trial court as an expert in fingerprint identification. Robeau obtained defendant's fingerprints in court; these fingerprints were introduced in evidence as S-4. Robeau compared the fingerprints of Larry L. Donahue's prison records (S-3) to those on S-4; she also compared fingerprints on the multiple offender bill of information (pertaining to Larry L. Donahue's prior habitual offender adjudication enhancing the sentence for the armed robbery in Orleans Parish) to those on S-4. Following those comparisons, Robeau concluded that the fingerprints on S-3, S-4 and the multiple offender bill previously filed in Orleans Parish were all of the same individual.
At the conclusion of the instant habitual offender hearing, the trial court adjudged defendant to be a Third Felony Habitual Offender. In doing so, it is apparent that the trial court relied upon a September 27, 1976, guilty plea to simple robbery under docket number 41563 of the Twenty-First Judicial District Court, the predicate conviction for defendant's prior second felony multiple offender adjudication in Orleans Parish. It is as to this prior guilty plea *261 that defendant now argues that the state failed to prove he was properly Boykinized.
A habitual offender bill of information does not charge a new crime but is only a method of increasing the punishment of second and subsequent felony offenses, State v. Walker, 416 So.2d 534, 536 (La.1982). It is essential that the prior conviction(s) be formally charged in order to sentence a defendant as a multiple offender. State v. Hingle, 242 La. 844, 139 So.2d 205, 206 (1961). The multiple offender indictment need only inform the accused of his previous felony conviction(s) within the time period set forth in LSA-R.S. 15:529.1. This satisfies the constitutional requirement that the accused shall be informed of the nature and cause of the accusation against him. State v. Bullock, 329 So.2d 733, 737 (La.1976); State v. Rowell, 306 So.2d 671, 675 (La.1975).
Because the instant multiple offender bill of information informed defendant only of his prior armed robbery conviction, only that prior conviction could be used for enhancement of the instant offenses. Accordingly, it was patently erroneous for the trial court to sentence defendant as a Third Felony Habitual Offender based upon another prior felony conviction (for simple robbery) as to which defendant was not specifically informed in the instant habitual offender bill of information.[6]
Consequently, we set aside defendant's adjudication as a Third Felony Habitual Offender and remand for recharging defendant as a Third Felony Habitual Offender and a new hearing thereon.
CONVICTION AFFIRMED. SENTENCE VACATED AND REMANDED FOR RECHARGE AS THIRD FELONY OFFENDER, AND REHEARING THEREON.
SAVOIE, J., dissents and assigns reasons.
SAVOIE, Judge, dissenting.
I dissent from that portion of the majority opinion which upholds the defendant's conviction for attempted first degree murder under LSA-R.S. 14:30 A(2) and 14:27. I believe that LSA-R.S. 14:30 A(2) requires that the defendant have actual or implied knowledge of the victim's identity as a police officer, and in this case the evidence, viewed under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), does not support a finding that the defendant had the specific intent to kill or inflict great bodily harm upon a peace officer engaged in the performance of his lawful duties.
LSA-R.S. 14:30 A(2) states in pertinent part:
A. First degree murder is the killing of a human being:
* * * * * *
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
* * * * * *
The purpose of this statute is to protect police officers performing their jobs from being killed or gravely injured by felons. The statute accomplishes this purpose by deterring criminals because the penalty for the murder of a police officer can be death.[1] This purpose is accomplished only where the defendant knows that the victim is a police officer for if the defendant does not know that the victim is a police officer, how is escalation of the murder of a police officer to a capital offense supposed to deter him?
*262 Reviewing the testimony and evidence in this case, we find that while any trier-of-fact could have found that the state proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that defendant had the specific intent to kill a human being, and that defendant performed an act(s) tending directly toward accomplishing his objective, a rational trier-of-fact would have had a reasonable doubt (under the circumstances present herein) that the state proved that defendant specifically intended to kill a peace officer engaged in the performance of his lawful duties.
We reach the foregoing conclusion for the following reasons. There was insufficient evidence introduced at trial to show that defendant had knowledge of Daniel's identity as a police officer. Daniel's testimony indicated that, although his truck had a long whip antenna, the truck had neither markings identifying it as a police vehicle nor anything else identifying him as the sheriff. The truck did have a small, red light on the dashboard, but the sheriff stated that this light was covered. The sheriff testified that he was wearing a badge at the time of the shooting but that defendant was not in a position to see the badge. While defendant's actions in drawing his weapon and firing the first shot just as the sheriff was arriving upon the scene are circumstances supportive of an inference that defendant possessed knowledge of Daniel's identity as a peace officer, the probative value of those circumstances is counterbalanced by other circumstances indicative of a lack of such knowledge. Those other circumstances were defendant's demand to the sheriff that he drop his weapon (after the sheriff requested that defendant relinquish his gun) and defendant's actions in immediately surrendering his gun when the sheriff displayed his badge to defendant. Hence, when viewed in the light most favorable to the prosecution, the evidence does not support a verdict of guilty of attempted first degree murder of a peace officer in violation of LSA-R.S. 14:30 A(2) and 14:27.
In this case, the evidence shows that the purpose of the statute was achieved: defendant surrendered his weapon once he was aware that Daniel was the sheriff.
In addition to achieving the purpose of the statute, we note that our interpretation is more consistent with the language of the statute. The majority opinion defines LSA-R.S. 14:30 A(2) as occurring where the offender possesses "the specific intent to kill a person who is a peace officer engaged in the performance of his lawful duties." Furthermore, doubt as to the scope of a criminal statute must be decided in favor of the accused and against the state. State v. Brown, 378 So.2d 916 (La. 1979).[2]
NOTES
[1] LSA-R.S. 14:30.1(A) defines second degree murder as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; ..."
[2] The record does not reflect whether defendant's requested jury instruction was timely submitted to the trial court before argument.
[3] LSA-C.Cr.P. art. 814(A)(2) provides:

(A.) The only responsive verdicts which may be rendered when the indictment charges the following offenses are:
(2.) Attempted First Degree Murder:
Guilty
Guilty of attempted second degree murder.
Guilty of attempted manslaughter.
Guilty of aggravated battery.
Not guilty.
(Emphasis ours).
[4] We note that, in State v. Marse, 365 So.2d 1319, 1322 (La.1978), the Louisiana Supreme Court stated:

The wisdom of the Louisiana responsive verdict systemboth as to those verdicts included and those excludedhas been questioned. See, Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). However, this Court has repeatedly upheld Article 814 against constitutional attacks. See, State v. Qualls, 353 So.2d 978 (La.1977); State v. Cook, 345 So.2d 29 (La.1977); State v. Palmer, 344 So.2d 964 (La.1977). In cases not involving the death penalty, the element of capriciousness injected into the proceedings by the responsive verdict system does not offend the constitutional safeguards. See, State v. Palmer, supra.
....
Defendant's ultimate protection is that if the state fails to prove the elements of the offense charged or of those offenses for which responsive verdicts are prescribed by La.C.Cr.P. art. 814, he is entitled to an acquittal.
[5] We note that the bill of information states that armed robbery conviction took place on May 14, 1980. However, the correct date for the conviction is May 15, 1980.
[6] Because defendant's status as a Second Felony Habitual Offender herein is not predicated on the September 27, 1976, guilty plea to simple robbery (upon which his prior multiple offender adjudication in Orleans Parish was based), we need not and do not address the contention raised by defendant in assignment number three that the state failed to prove he was properly Boykinized when he entered the guilty plea to the simple robbery.
[1] That the victim is a police officer is the only distinction between first degree murder under LSA-R.S. 14:30 A(2), a capital offense, and second degree murder under LSA-R.S. 14:30.1 A(1), a noncapital offense.
[2] Thorough research of the jurisprudence under LSA-R.S. 14:30 A(2) reveals only one Louisiana case dealing with first degree murder or attempted first degree murder of a police officer. State v. Bessard, 461 So.2d 1201 (La.App.3d Cir. 1984), writ denied, 466 So.2d 467 (La.1985). In Bessard, the defendant attempted to shoot a police officer while he was being booked at the police station; thus, it was clear defendant was aware that his victim was a police officer. In an Alabama case, Ex parte Murry, 455 So.2d 72 (Ala.1984), the Alabama Supreme Court found that murder of a police officer could be raised to a capital offense only if the defendant knew the victim was a peace officer on duty. In the Murry case, the court reviewed the "murder of a peace officer" capital offense statutes of thirty-two other states; the court listed Louisiana under "States With a Knowledge Requirement."