817 So.2d 120 (2002)
STATE of Louisiana
v.
Leroy JOHNSON, Jr.
No. 01-1084.
Court of Appeal of Louisiana, Third Circuit.
February 6, 2002.
*121 Lawrence C. Billeaud, Louisiana Appellate Project, Lafayette, LA, Counsel for Defendant/Appellant: Leroy Johnson, Jr.
James M. Buck, Assistant District Attorney, Alexandria, LA, Counsel for: State of Louisiana.
Court composed of ULYSSES GENE THIBODEAUX, MARC T. AMY and ELIZABETH A. PICKETT, Judges.
*122 THIBODEAUX, Judge.
The Defendant, Leroy Johnson, Jr., appeals his convictions for second degree murder and conspiracy to commit murder on the basis of insufficiency of the evidence.
We affirm his convictions and sentences.

FACTS
On Friday, February 23, 1996, the victim, Glenda Faye Overton, was employed with Hilltop Nursing Home as a certified nurse's assistant. She clocked out of work at ten o'clock on the evening of the 23rd. At the time, she lived in Pineville with Marilyn Johnson. Defendant, who married Marilyn Johnson in October 1995, was committed to Central Louisiana State Hospital, a mental health institution.
On the afternoon of Friday, February 23, 1996, Marilyn Johnson picked up her husband, who had a weekend pass from the hospital. Around eleven o'clock that night, Marilyn Johnson left the house to go to her mother-in-law's house a few blocks away. At that time, the victim and the Defendant were in the house. Ms. Johnson returned approximately an hour later. As she was approaching the house, she heard the victim screaming, "Please don't. Stop. Stop." She ran back to her mother-in-law's house, but returned after she was told that the Defendant had called for her there. Upon her return, she found the Defendant standing over the victim in the bedroom. The victim, who was in her nightgown, was on the floor, badly beaten, and tied up with a nylon stocking.
Defendant left the house for about an hour and a half. Ms. Johnson did not let the victim go or call for help. When the Defendant returned, he told her he had dug a grave. He told her the grave was located a few blocks away behind an abandoned structure, and told her to see if the grave was deep enough. She left to check the grave. After she returned, they waited for a while, then took the victim, who was conscious, to the grave. He first placed the victim on her side, but when he saw the grave was too shallow for her to fit, he placed her on her back. He then made a statement that he could not do it and gave Ms. Johnson a kitchen knife and ordered her to kill the victim. She stabbed the victim repeatedly in the chest area. Three years later, Marilyn Johnson came forth voluntarily and confessed to the killing.

ASSIGNMENT OF ERROR
Defendant alleges there was insufficient evidence to sustain the convictions for second degree murder and conspiracy to commit second degree murder. Defendant argues that his convictions were based on the self-serving and uncorroborated testimony of his wife, Marilyn Johnson. Whereas his convictions were also based in part on circumstantial evidence, he further argues that the State failed to sustain its burden to exclude every reasonable hypothesis of innocence. Specifically, Defendant asserts that the State failed to exclude the reasonable hypothesis that Marilyn Johnson killed the victim and the Defendant only helped to dispose of the body.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
Defendant's convictions were based primarily on Ms. Johnson's in-court testimony *123 regarding the killing and disposal of the victim's body. Citing State v. Castleberry, 98-1388 (La.4/13/99); 758 So.2d 749, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999), the Defendant argues that an accomplice's testimony should be regarded with "great caution" when the accomplice's testimony is uncorroborated. The issue in Castleberry was whether the trial court should have instructed the jury to regard the accomplice's testimony with great caution when there was no material evidence to corroborate the accomplice's tale, and confirm the defendant's identity and relationship to the situation.
However, it is a general principle of law that a conviction can be sustained on the uncorroborated testimony of a purported accomplice. State v. Hebert, 444 So.2d 228 (La.App. 1 Cir.1983); State v. May, 339 So.2d 764 (La.1976). It is the role of the factfinder to weigh the respective credibility of the witness, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559. Furthermore, in the absence of internal contradictions or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the factfinder, is sufficient to support a conviction. See State v. Johnson, 00-1552 (La.App. 5 Cir. 3/28/01); 783 So.2d 520.
Defendant argues that considering the "great caution" standard and the fact that Ms. Johnson's testimony was self-serving, the evidence was insufficient to sustain the convictions. The Defendant does not, however, set forth in what way Ms. Johnson's testimony was self-serving.
In 1996, Donald Frederick Thiels was a detective with the Rapides Parish Sheriffs Department assigned to the Pineville City Police Department. Detective Thiels was the original officer investigating the disappearance of the victim. Detective Thiels testified that he and his partner, Detective Dana Rachel, tracked the victim down to where she was known to live on the last day she was seen alive. The house, however, was empty; the occupants moved shortly after the victim disappeared. They finally located and interviewed Marilyn Johnson, who denied knowledge of the victim's whereabouts. They were not able to interview the Defendant.
On June 7, 1999, Marilyn Johnson, who had since separated from the Defendant and was living with her son in Jackson, Louisiana, called the Pineville City Police Department and confessed to the murder. On June 15, 1999, Detective Dana Rachel and Detective Terral Paul, both with the Pineville City Police Department, traveled to Jackson and brought Ms. Johnson back to Pineville.
Ms. Johnson gave a full statement to the officers, including various details regarding the murder. She also took them to the grave site. At the time Ms. Johnson gave her statement to the two officers she told them that the victim was wearing a nightgown at the time of death and that a nylon stocking was used to tie the victim. The initial statement she gave to the two officers was identical to the testimony she gave at Defendant's trial. Furthermore, Mary Manhein, a forensic anthropologist, testified that when the victim's remains were recovered the victim was dressed in a nightgown and a nylon cord-like material was found with the body. There is nothing in the record to contradict Ms. Johnson's testimony, nor were there any irreconcilable conflicts with the evidence.
There is nothing in the record to indicate that Ms. Johnson had anything to gain from her initial voluntary confession *124 of the murder of the victim. Detective Thiels testified that the investigation had produced no results and the case lay a little more than dormant for more than three years until Ms. Johnson came forth with a confession in June 1999. Ms. Johnson pled guilty to manslaughter pursuant to a plea agreement which required her to testify truthfully at the Defendant's trial. Prior to Defendant's trial, Ms. Johnson was sentenced to forty years at hard labor, the maximum possible sentence permitted on a conviction for manslaughter. See La.R.S. 14:31. Therefore, the uncorroborated testimony of Ms. Johnson was sufficient to establish the essential elements of the crimes for which the Defendant was convicted.
In order for the State to have obtained a conviction, it had to prove the elements of the crime beyond a reasonable doubt. Defendant was charged with the crime of second degree murder, in violation of La. R.S. 14:30.1, which states, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm.
Ms. Johnson testified that when she returned home, the victim was alive, but the Defendant had tied her up with a nylon stocking. He then left the house to go and dig a grave. After putting the victim into her grave, the Defendant gave a knife to Ms. Johnson and ordered her to kill the victim. Ms. Johnson testified that after she first stabbed the victim, the victim tried to sit up. The Defendant said, "[t]his bitchthis bitch is fighting for her life," and ordered her to stab the victim again. Even though Ms. Johnson admitted that she was the one who stabbed the victim, Defendant was a principal to the act as defined by La.R.S. 14:24, which states:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Ms. Johnson testified that after she found the Defendant standing over the beaten and tied victim, he told her, "You seeyou see, now. You see what I tell you whenwhen they do something to me I tell you I'll take [sic] of it," and left the house to dig a grave for the victim. Defendant tied up the victim to prevent her escape after beating her. He left the house to dig the grave, and he gave the knife to Ms. Johnson. When the Defendant handed the knife to Ms. Johnson and told her to stab the victim, he fully intended the death of the victim. He knowingly participated in the planning and execution of the crime. Each participant acted in concert and became responsible not only for his own act, but for the acts of the other. See State v. Anderson, 97-1301 (La.2/6/98); 707 So.2d 1223, State v. Tobias, 452 So.2d 157 (La.1984), and State v. Clay, 441 So.2d 1227 (La.App. 1 Cir.1983), writ denied, 446 So.2d 1213 (La.1984).
Defendant was also found guilty of conspiracy to commit second degree murder in violation of La.R.S. 14:26, which states:
A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
*125 An essential element of the crime of conspiracy is specific intent. State v. Guillory, 540 So.2d 1212 (La.App. 3 Cir. 1989). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequence to follow. As a question of fact, intent may be inferred from the circumstances of the actions of the offender. See La.R.S. 14:10(1) and State v. Valrie, 99-226 (La.App. 3 Cir. 10/13/99); 749 So.2d 11, writ denied, 99-3236 (La.4/20/00); 760 So.2d 343. At trial, Ms. Johnson was asked:
Q. Couldn't you have let Glenda go?
A. Yes, sir. I could.
Q. Is there a reason you didn't?
A. The reason why I didn't because she was beat up real bad and I was scared and shewe didn't have no money and we didn't know no one.
* * * * * * * *
A. At that point in time we waited for a while until about day light that morning and then he said, "Well, come on." And he said, "Ya'll come on." And we walked behind the house where you just showed me and he put her in the hole. At first he put her in the hole sideways and then she wouldn't fit that way and he put her on her back. And then he kneeled down to his knees and he said, "I can't do it." And so, he had gave me the knife and he told me to stab her."
Whether the agreement to murder the victim was actually discussed or tacit, when the Defendant left Ms. Johnson in the house alone with the victim to go and dig the victim's grave, and she did not untie the victim or call for help, there was sufficient evidence for the jury to reasonably infer that the Defendant and Ms. Johnson entered into an agreement to kill the victim.
Finally, the Defendant argues that because the State's case was based in part on circumstantial evidence, the State must exclude every reasonable hypothesis of innocence as it relates to each element of the crime charged. Defendant argues in brief that he only helped to dispose of the body. The Defendant did not testify, nor did he present any evidence that would support the supposition that he was an accessory after the fact instead of a principal to the killing. However, in his closing argument, Defendant suggested to the jury that Ms. Johnson killed the victim because she was jealous of the victim and that the Defendant, home from the hospital that weekend, simply helped her dispose of the body.
It was established at trial that Defendant checked out of the hospital the same day of the victim's disappearance. It was also established at trial that the Defendant had a prior relationship with the victim. Elwanda Reed, who had worked with the victim at Hilltop Nursing Home and had been friends with her for several years, testified that the Defendant and the victim had been boyfriend and girlfriend. The victim's sister, Barbara Henry, testified that the victim and the Defendant visited her in November 1995, and shared the same bedroom during that visit, a month after he had married Ms. Johnson.
Except for Ms. Johnson's testimony, there is no other direct evidence of the Defendant's guilt. Circumstantial evidence consists of the proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Donahue, 572 So.2d 255 (La.App. 1 Cir.1990). In State v. Porter, 99-1722 (La.App. 3 Cir. 5/3/00); 761 So.2d 115, this court discussed the methodology for finding a reasonable hypothesis of innocence. In its analysis, this court stated:

*126 The circumstantial evidence rule does not require the State to exclude every possible theory of innocence, but only the reasonable hypotheses of innocence. State v. Lilly, 468 So.2d 1154 (La.1985). In circumstantial evidence cases, this court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, this court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Id. at 123-124, citing State v. Davis, 92-1623 (La.5/23/94); 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
Clearly, the triers of fact determined that the hypothesis put forth by the Defendant, that he only assisted Ms. Johnson in disposing of the body, was not a reasonable alternative hypothesis. Considering that there were no internal contradictions, nor any irreconcilable conflicts with the physical evidence, great deference should be given the jurors' conclusion that Ms. Johnson's testimony was credible and sufficient to prove beyond a reasonable doubt all the elements of the crimes of which the Defendant was charged. There is nothing in the record to indicate otherwise; accordingly, there is no merit to this assignment.

CONCLUSION
Based on the foregoing, the Defendant's convictions and sentences for second degree murder and conspiracy to commit murder are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.