554 So.2d 1298 (1989)
STATE of Louisiana
v.
Michael Lewis HICKS.
No. KA 88 1965.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
*1300 Bryan Bush, Dist. Atty., Baton Rouge by Jesse Bankston, Asst. Dist. Atty., for plaintiff/appellee.
Ahmed Raheem Muhammad, Baton Rouge, for defendant/appellant.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
LeBLANC, Judge.
Defendant, Michael Lewis Hicks, was charged by bill of information with attempted armed robbery, a violation of La. R.S. 14:27 and 64. He was tried by jury and found guilty as charged. Subsequently, defendant was sentenced to imprisonment at hard labor for thirty years "without benefit of parole, with credit for time served." Defendant appealed, designating nine assignments of error, but briefing only the following five assignments:
Assignment No. 1: The appellate court should grant defendant a post-verdict judgment of acquittal because the evidence was insufficient to exclude every reasonable hypothesis of innocence and to prove beyond a reasonable doubt that defendant was the perpetrator of the attempted armed robbery.
Assignment No. 5: The trial court erred in allowing the State to improperly impeach one of defendant's witnesses.
Assignment No. 6: The trial court erred in denying defendant's motion for a mistrial based on a reference made by a policeman testifying for the State to another crime allegedly committed by defendant.
Assignment No. 7: The trial court erred in imposing an excessive sentence.
Assignment No. 10: The defendant received ineffective assistance of counsel from his court-appointed attorney.[1]

*1301 FACTS
The record indicates that the instant offense occurred at sometime between approximately 10:30 a.m. and 12:00 p.m. on March 4, 1988. At that time, Nancy Jamerson opened the front door of her home in response to the doorbell to find a man there who stated he had a package to deliver for Mrs. Jamerson's daughter. When Mrs. Jamerson unlocked the outer security door to take the package, the man grabbed the door, pointed a handgun at her and entered the house. Mrs. Jamerson screamed. The man told her he had come to rob her and that, if she did not stop screaming, he would shoot her "brains out." Mrs. Jamerson continued to scream and ran out the front door. As she fled, the man shot at her and she was struck in the right hand.
Amanda H. Green, Mrs. Jamerson's next door neighbor, immediately stepped outside when she heard screaming and observed Mrs. Jamerson and a strange man standing in the yard facing Green and looking at Mrs. Jamerson. His gun was pointing toward the ground, as if he were "in shock". He then turned and ran toward a car parked in front of Mrs. Jamerson's house. Once the man entered the car, another man drove it away. However, Green managed to get the first two numbers of the car's license plate.
Baton Rouge City Police Detective Ronald Stevens arrived at the crime scene at about 12:50 p.m. and talked to both Mrs. Jamerson and Amanda Green. He obtained a description of the perpetrator and the car involved, including the first two numbers of its license plate.
Several days later, the police located a car fitting the description of the vehicle in which the perpetrator had fled. The vehicle was found at the home where defendant and his girlfriend, Carlette Alexander, resided. A registration check indicated the car had a "switched license plate" on it. When shown the car, Mrs. Green identified it as one looking like the car she had seen in front of Mrs. Jamerson's house.
On the following day, Detective Elbert Hill and another detective conducted a surveillance of the car. Shortly after seeing a man and a woman get in the car, they stopped the vehicle. The driver was identified as defendant, and the female passenger as Carlette Alexander. Ms. Alexander indicated the car belonged to her. Defendant was placed under arrest.
Defendant testified that, on March 4 at about 11:45, he left home in Carlette Alexander's car and went briefly to the home of Harvey Alexander. From there he stated he went back home, arriving at about 12:15-12:30 p.m., talked to Carlette for about ten minutes, and then drove to a fast-food restaurant to purchase food. He estimated it took him approximately fifteen to twenty minutes to go to the restaurant, get the food and return home. He stated he took Ms. Alexander to work at about 1:30 and then returned home. Defendant emphatically denied that he attempted to rob Mrs. Jamerson.

ASSIGNMENT OF ERROR NO. ONE
By means of this assignment, defendant asserts the trial court erred in denying his motion for a post-verdict judgment of acquittal because the circumstantial evidence presented by the State at trial did not exclude every reasonable hypothesis of innocence.
Initially, we note the record does not reflect defendant ever filed a motion for post-verdict judgment of acquittal as he should have in order to challenge his conviction on the basis of insufficiency of the evidence. La.C.Cr.P. art. 821. Nevertheless, we will consider his claim of insufficiency of the evidence which he has briefed pursuant to a formal assignment of error.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier-of-fact that all of the elements *1302 of the crime had been proved beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676, 678 (La. 1984).
As defined in La.R.S. 14:64, armed robbery consists of the following elements: (1) the "taking" (2) "of anything of value belonging to another" (3) "from the person of another or that is in the immediate control of another," (4) "by use of force or intimidation," (5) "while armed with a dangerous weapon." An "attempt" is defined in La.R.S. 14:27, in pertinent part, as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Thus, to be guilty of attempted armed robbery, a defendant must have a specific intent to commit armed robbery, and he must do or omit an act for the purpose of and tending directly toward the accomplishment of his object.
La.R.S. 14:10(1) defines specific intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Although specific intent may be proven by direct evidence, it need not be proven as a fact, but can be inferred from the circumstances of the transaction and the actions of the defendant. La.R.S. 15:445[2]; State v. Ruple, 426 So.2d 249, 252 (La.App. 1st Cir.1983).
Intent, absent an admission of such by a defendant, must necessarily be proven by inferences from surrounding facts and circumstances. See, R.S. 15:445; State v. Duncan, 390 So.2d 859, 861 (La.1980). In the present case, defendant denied any intent to commit armed robbery. Thus, it was necessary that the state prove this element of the crime by circumstantial evidence. The rule regarding the use of circumstantial evidence is contained in La.R.S. 15:438. This rule restrains the factfinder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove, and then to convict only if every reasonable hypothesis of innocence is excluded. State v. Lilly, 468 So.2d 1154, 1158 (La.1985).
Defendant argues the evidence is insufficient to establish the exact time the offense occurred, so as to overcome his alibi testimony. This argument is meritless. The time of commission of an attempted armed robbery is not an element of the offense. While the victim initially testified on direct examination that the offense occurred at about 1:00 p.m., she later stated on cross-examination that she had been mistaken and that the crime had occurred at about 10:30-11:00 a.m. The trier-of-fact may accept or reject, in whole or in part, the testimony of any witness. State v. Walder, 504 So.2d 991, 996 (La.App. 1st Cir.), writ denied 506 So.2d 1223 (1987). The jury's verdict clearly indicates that it rejected defendant's alibi testimony and accepted the testimony of the victim and Amanda Green identifying defendant as the perpetrator as more credible.
Defendant also argues that the evidence is insufficient because: (1) no weapon that could be linked to him was ever recovered; (2) his fingerprints were not found at the crime scene; and, (3) the state failed to prove that the car he was driving at the time of his arrest was the same car observed by witnesses at the crime scene. These arguments are without merit. While such evidence certainly would have been probative evidence relevant to prove defendant's guilt had such been introduced, the evidence actually introduced at trial clearly was sufficient to prove the necessary elements of the crime and defendant's identity as the perpetrator of the offense.
*1303 Mrs. Jamerson, the victim, and Amanda Green both positively identified defendant as the perpetrator. The victim testified that, after defendant gained entry to her home he placed a gun to her head, threatened to kill her and told her he had come to "rob [her] damn house," specifically stating that he wanted money. When she ran, he shot her before fleeing the scene. Viewing the above evidence in the light most favorable to the state, any rational trier-of-fact could have found that the state proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that defendant had the requisite specific intent to commit armed robbery, and that he performed an act for the purpose of accomplishing that objective.
Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. FIVE
In this assignment, defendant contends the trial court committed reversible error in allowing the state to impeach Carlette Alexander by introducing evidence of a prior inconsistent statement, when no proper foundation for the impeachment had been laid. At the time of defendant's trial, La.R.S. 15:493 provided as follows:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he had made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible. [emphasis added]
During her cross-examination, Carlette Alexander testified that defendant left home on March 4, 1988, at between 10:30 and 11:00 o'clock. Thereupon, the prosecutor questioned Ms. Alexander as to whether she had given an earlier statement to the police indicating defendant had left their house "a little before 12:00 or 12:00". Ms. Alexander replied that she did not recall making such a statement. Thereafter, on rebuttal, the state presented the testimony of Detective Hill and introduced in evidence the pertinent portion of Ms. Alexander's taped statement evidencing her prior inconsistent statement as to when defendant left the house on the date of the attempted robbery.
In this case, before any impeachment evidence was introduced, the witness was first asked whether or not she had made a prior statement that defendant had left home "a little before 12:00 or 12:00." Her attention was called to the time, place and circumstances, and to whom the alleged statement was made. In responding that she did not recall making the statement, the witness did not "distinctly admit" making the statement. Therefore, evidence that she made the statement was admissible. See, La.R.S. 15:493; State v. Sullivan, 352 So.2d 649, 654 (La.1977).
Defendant additionally argues that even if a proper foundation was laid, the witness' impeachment was improper, because it related to collateral facts not relevant to the issue of defendant's guilt or innocence. At the time of trial, La.R.S. 15:494 provided that "[i]t is not competent to impeach a witness as to collateral facts or irrelevant matter." However, since the time defendant left home was highly relevant to his alibi defense, we conclude the witness' impeachment was not prohibited by La.R.S. 15:494.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. SIX
In this assignment, defendant argues the trial court erred in denying defense counsel's motion for mistrial, which was made when Detective Hill made a prejudicial remark during his testimony by referring to an attempted murder charge which had been dismissed before trial. Defendant argues the remark is imputable to the state and mandated a mistrial.
The record reflects that the alleged improper remark was made during the state's presentation of Detective Hill's testimony on rebuttal. The remark and the context in *1304 which it was made is as follows. Hill testified on direct examination that, on March 8, 1988, after Carlette Alexander and defendant were stopped and Alexander was taken to the detective's office, she made a taped statement. Thereupon, the prosecutor continued his direct examination of Hill, in pertinent part, as follows:
Q I show you what I've marked as State Exhibit Seventeen and ask you if you recognize this?
A Yes, it has the date, it has her name and it has my signature on it.
Q And what is this?
A This is the taped statement which she gave on her own in regards to what knowledge she had to the possible armed robbery or attempt (sic) murder, and the use of a vehicle.
Q Occurring on March the 4th, 1988?
A Yes.
At this juncture, defense counsel moved, outside the presence of the jury, for a mistrial on the basis of Hill's reference to an attempted murder. The prosecutor countered that the shooting (which gave rise to the attempted murder charge) was part of the res gestae. While the jury was still outside the courtroom, Hill informed the trial court that he had mentioned the attempted murder only because he was unaware the trial was limited to the charge of attempted armed robbery. The trial court denied the motion for mistrial, stating that the alleged other crime of attempted murder was part of the res gestae; but the court did offer to admonish the jury to disregard Hill's remark, if defense counsel desired such an admonition. Defense counsel declined the offer.
La.C.Cr.P. art. 770 provides in pertinent part as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; ...
Under this article, the prohibition against references to inadmissible evidence of other crimes does not apply to evidence of words or actions which form part of the res gestae, which is always admissible into evidence. La.R.S. 15:447; State v. Brown, 428 So.2d 438, 441 (La.1983); State v. Wascom, 524 So.2d 1342, 1345 (La.App. 1st Cir.), writ denied, 531 So.2d 470 (1988). To constitute res gestae, those actions or words must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. La.R.S. 15:448. In the present case, Hill's reference to an attempted murder was a reference to another alleged crime which was within the res gestae of the instant offense since the alleged attempted murder, i.e., the shooting, occurred during the commission of the instant offense. As part of the res gestae, evidence of this other alleged crime was clearly admissible. Thus, the reference was not prohibited by La.C.Cr.P. art. 770. Accordingly, the trial court properly denied the motion for mistrial on this basis.
Even assuming, arguendo, that Hill's remark was one referring to another crime as to which evidence was inadmissible, there was no showing that a mistrial was appropriate herein. Article 770(2) applies to remarks made by a judge, district attorney or a "court official". The remark herein was made by a police detective testifying for the state. A police officer's unsolicited, unresponsive reference to another crime alleged to have been committed by a defendant is not the comment of a court official under La.C.Cr.P. art. 770(2). State v. Nuccio, 454 So.2d 93, 101 (La.1984); State v. Tate, 506 So.2d 546, 550 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (1987). However, such an officer will be held to the same standard if his answers show a pattern of unresponsiveness or improper intent. In this case, there was no showing of a pattern of unresponsive answers by the officer or that his unsolicited and unresponsive remark was malicious or made with any improper intent. He explained *1305 that he was unaware that defendant's trial was on the attempted robbery charge only. Under such a scenario, the officer's remark is not chargeable to the state, and the mandatory mistrial provision of La.C.Cr.P. art. 770 is not applicable. Id. The trial court's offer to admonish the jury, which defendant declined, was sufficient to cure any possible prejudice to defendant. Hence, this assignment is without merit.

ASSIGNMENT OF ERROR NO. SEVEN
By means of this assignment, defendant contends the trial court erred in failing to comply with the sentencing guidelines contained in La.C.Cr.P. art. 894.1 and in imposing an excessive sentence.
Generally, a sentence is considered excessive if it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. Because of the wide discretion afforded the trial court in imposing sentence, a sentence within statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Orgeron, 512 So.2d 467 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (1988). A trial court's reasons in imposing sentence, as required by La.C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. State v. Christy, 509 So.2d 829, 831 (La.App. 1st Cir.), writ denied, 513 So.2d 296 (1987). Although the trial court need not recite the entire checklist found in La.C.Cr.P. art. 894.1, the record must reflect it adequately considered the guidelines. State v. Davis, 448 So.2d 645, 653 (La.1984). Even when the trial court has not complied with La.C. Cr.P. art. 894.1, this Court need not remand the case for resentencing, unless the sentence imposed is apparently severe in relation to the particular offender or the offense committed. State v. Carr, 530 So.2d 579, 592 (La.App. 1st Cir.), writ denied, 533 So.2d 354 (1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989).
Attempted armed robbery is punishable by imprisonment at hard labor for a term not to exceed forty-nine years, without benefit of parole, probation or suspension of sentence. La.R.S. 14:27 D(3) and 14:64. Herein, defendant was sentenced to imprisonment at hard labor for a term of thirty years, without benefit of parole.
The record reflects that the trial court ordered a presentence investigation report, which it considered before imposing sentence. The court acknowledged that defendant had no juvenile record. However, his criminal history as an adult went back to 1967, including a federal conviction on two counts of theft of an interstate shipment, a state conviction for auto theft, as well as several additional arrests for theft and probation violations.
Additionally, the trial court stated that defendant must have contemplated that his criminal conduct of shooting his firearm would cause or threaten serious harm to Mrs. Jamerson, as in fact occurred. The trial court found no grounds tending to excuse or justify defendant's conduct. The court concluded that even though imprisonment would entail hardship to defendant, that hardship was outweighed by the seriousness of his crime. The court believed that any lesser punishment would deprecate the seriousness of the offense and that defendant was in need of correctional treatment with a custodial environment.
In our view, the trial court adequately complied with the sentencing guidelines of La. C.Cr.P. art. 894.1. Further, we do not find defendant's sentence grossly disproportionate so as to shock our sense of justice. Based upon defendant's past history of repeated criminality, and the violence he displayed in committing this offense, he clearly poses a risk to public safety. Hence, we find no manifest abuse of the trial court's sentencing discretion. The sentence imposed is not excessive.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. TEN
By means of this assignment, defendant contends he was denied his right to effective assistance of counsel in violation of the United States and Louisiana Constitutions. *1306 Defendant's claim of ineffective counsel is predicated on several allegations of deficient performance by trial counsel.
Initially, we note that a claim of ineffective counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. State v. Bourgeois, 451 So.2d 172, 174 (La.App. 1st Cir.), writ denied, 457 So.2d 18 (1984). However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. Id.
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction [or death sentence]. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Strickland, 104 S.Ct. at 2064.
In this case, defendant's allegations of deficient performance of his trial counsel include two allegations as to which the record does not disclose sufficient evidence to determine whether they have any merit. These allegations are that trial counsel failed to adequately prepare either defendant or his alibi witness, Carlette Alexander, for testifying at trial. However, because support for these allegations is not evident in the record, we do not find these assertions meritorious. See, State v. Brooks, 505 So.2d 714, 723 (La.), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Nonetheless, defendant has the right to apply for post-conviction relief on the basis of ineffective assistance of counsel predicated on these allegations. See, Brooks at 724.
Defendant also makes several other allegations of deficient performance by his trial counsel, a determination of the merits of which can be made upon the record before us. These allegations are as follows:
1) Trial counsel failed to file a motion to suppress defendant's in-court or out-of-court identification;
2) Trial counsel failed to file a motion to suppress the evidence used at trial;
3) Trial counsel failed to file discovery motions;
4) Trial counsel failed to object to questions posed to Detective Hill concerning references to other crimes evidence which was inadmissible at trial;
5) Trial counsel erred in not requesting an admonition to the jury.

IDENTIFICATIONS
Defendant alleges trial counsel's performance was deficient because he failed to file a motion to suppress the in-court and out-of-court identifications of defendant. He asserts his trial counsel's failure to move to suppress the in-court identifications was extremely prejudicial, denying him the opportunity to prove these identifications were inherently unreliable, unduly suggestive, and did not have an independent basis. Defendant also makes a general allegation that his trial counsel failed to move to suppress "the evidence used at trial". However, defendant does not indicate what evidence he is referring to in this allegation or any basis upon which any evidence could have been suppressed. Accordingly, we must limit our review to the issue defendant clearly raises, i.e., the identification issue.
Detective Hill testified that on March 8, 1988, he took a Polaroid picture of defendant *1307 and included it with five other photographs in a photographic lineup, which he took to Mrs. Jamerson's house. Mrs. Jamerson was unable to make an identification of defendant at that time. Detective Hill then took the photo lineup next door to Amanda Green for her viewing. According to Mrs. Green's testimony, Detective Hill came to her home, told her he had some pictures he wanted her to look at and then showed her the photo lineup. The testimony of Green and Hill indicates that Green's selection of defendant's picture from the photo lineup was without hesitation and she had no doubt as to defendant's identity as the perpetrator.
In regard to the physical lineup conducted on March 9 at the Parish Prison, Detective Hill testified defense counsel assisted defendant in selecting persons of similar appearance to comprise the physical lineup. Again, Mrs. Green selected defendant from the line-up, testifying that she was certain of her identification of defendant. Mrs. Jamerson did not view the physical lineup.
We conclude there is nothing in the record indicating the pretrial identifications of defendant were in any way suggestive. However, even assuming arguendo that these identifications were suggestive, we conclude the out-of-court identifications were reliable and that the in-court identifications had independent bases. Mrs. Green's out-of-court identification of defendant from the photo lineup was made four days after the crime, and her identification of him at the physical lineup occurred one day later. Only approximately four months elapsed between the in-court identifications, made by Mrs. Green and the victim, and the commission of the offense. The offense occurred in daylight at approximately midday. Both Mrs. Green and Mrs. Jamerson testified at trial that they were positive of defendant's identity. At the time of the offense, the victim was in close proximity to defendant. The record reflects that at the time of the offense, Mrs. Green observed defendant from a relatively short distance and over a sufficient period of time to get a good look at him. She stated that she would never forget defendant's face. Cf. State v. Brown, 481 So.2d 679, 685 (La.App. 1st Cir.1985), writ denied, 486 So.2d 747 (La.1986). Accordingly, we find no merit to defendant's allegations concerning the identification evidence.

DISCOVERY MOTIONS
Defendant alleges that his trial counsel's performance was deficient, because he failed to file any discovery motions. To the contrary, the record reflects counsel filed a written motion for discovery, consisting of twenty-four requested items; and the state filed a written answer to the requested items. This allegation is unfounded and meritless.

OTHER CRIMES EVIDENCE
Defendant makes two allegations of deficient performance by his trial counsel in regard to other crimes evidence. One allegation relates to the issue already reviewed under assignment of error number six. Defendant argues that trial counsel's failure to request an admonition to the jury to disregard Detective Hill's reference to the attempted murder charge provides a basis for a claim of ineffective counsel. In accordance with our finding, as to assignment six, that the evidence of the shooting (i.e., the alleged attempted murder,) was admissible as part of the res gestae, defendant would not have been entitled to an admonition. Moreover, when defense counsel declined an admonition offered by the trial court, the trial court opined that it agreed with counsel's stragetic decision, noting that an admonition would have served only to draw further attention to the alleged attempted murder. Hence, we find trial counsel's failure to request an admonition did not represent any deficiency in his performance, but was a stragetic decision.
Defendant's remaining allegation of deficient performance pertains to counsel's failure to move for a mistrial when Detective Hill gave testimony that defendant had been originally charged with having a switched license plate on the vehicle he was driving at the time of his arrest. *1308 Defendant asserts that if trial counsel had moved for a mistrial, he would have been entitled to a mandatory mistrial under La. C.Cr.P. art. 770(2) on the basis of Hill's remarks.
With regard to this allegation, defendant directs this Court's attention to two particular portions of Detective Hill's testimony. After closely examining Hill's testimony, we find that, contrary to defendant's argument in brief, no reference was made by Hill as to defendant ever having been charged for switching the license plate. Rather, Detective Hill's remark merely referred to the vehicle having a switched license plate, rather than to any particular person having switched or having been charged with switching it. Thus, even assuming, arguendo, that the reference was to another crime, the reference was not a basis for a mistrial under La.C.Cr.P. art. 770(2). To constitute a prohibited reference under this article, the reference must be to another crime committed or alleged to have been committed by the defendant. See, State v. Webb, 419 So.2d 436, 440 (La.1982). Accordingly, Hill's remark herein was not prohibited by La.C.Cr.P. art. 770(2). Hence, trial counsel did not err in failing to move for a mistrial on this basis.
Based upon our review of the record in light of defendant's allegations of deficient performance, we find that he has failed to substantiate his claim of ineffective counsel. Thus, this assignment lacks merit.[3]
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Since the remaining assignments of error designated by defendant were not briefed on appeal, they are considered abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4.
[2] La.R.S. 14:445, as well as La.R.S. 15:447, 448, 493 and 494, which are referred to elsewhere in this opinion, were repealed by Acts 1988, No. 515 § 8, effective January 1, 1989, i.e., subsequent to the trial of this case.
[3] In another assignment of error, which defendant denominated as assignment of error number ten, defendant makes a general request, without alleging any specific error, that this Court examine the record for errors patent. Such a request serves no purpose and is totally unnecessary, since this Court routinely examines all criminal appellate records for errors patent in accordance with La.C.Cr.P. art. 920(2). No patent errors were found in this case.