578 So.2d 143 (1990)
STATE of Louisiana
v.
Jon SIGUR.
KA 89 2141.
Court of Appeal of Louisiana, First Circuit.
November 26, 1990.
Rehearing Denied March 27, 1991.
Writ Denied June 28, 1991.
Donald Camouche, Dist. Atty., Donaldsonville, for appellee State.
Anthony Marabella, Jr., Baton Rouge, for appellant Jon Sigur.
Before EDWARDS, WATKINS and LeBLANC, JJ.
EDWARDS, Judge.
Jon Sigur was charged by bill of information with possession of cocaine, a violation of LSA-R.S. 40:967(C). After trial by jury, defendant was found guilty as charged. The trial court sentenced defendant to imprisonment at hard labor for a term of five *144 years. Defendant has appealed, urging eight assignments of error:
1. The trial court erred by allowing evidence of other narcotics into evidence and "by not requiring that defendant be given notice,"
2. The trial court erred by allowing the offense report to be introduced into evidence,
3. The trial court erred by allowing the initial offense report into evidence "without prior notice,"
4. The trial court erred by allowing one yellow tablet to be introduced into evidence,
5. The trial court erred by allowing the marijuana to be introduced into evidence,
6. The trial court allowed the prosecution to make prejudicial argument, introducing facts not in evidence, during closing arguments,
7. The trial court erred by not granting defendant's motion for new trial after a finding that the jury had been prejudiced by extraneous information, and
8. Defendant failed to receive effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 13, of the Louisiana Constitution.
Assignment of error number six was not briefed on appeal and, therefore, is considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.

FACTS
During the early predawn hours of April 13, 1988, State Trooper Douglas W. Robertson was on routine patrol in his police unit on U.S. Highway 61 in Ascension Parish. According to Robertson, he observed a black 1975 Mercedes weaving from the right lane of the highway onto the shoulder of the highway, crossing a clearly visible white line (demarcating the right lane of the road and the shoulder) by a distance of about one-half a car width; he observed the vehicle do this several times. Thereafter, Robertson stopped the Mercedes; and defendant, who was driving the Mercedes, exited the car.
Robertson testified that, when defendant walked toward him after exiting the vehicle, he observed that defendant staggered slightly. When defendant got close to Robertson, Robertson advised defendant that he was stopped because of his weaving onto the shoulder of the highway. Defendant told Robertson that he had been working all day and that he was tired and very nervous. At that time, Robertson noticed that defendant's speech was slurred, that his eyes were red and glassy, and that he had a moderate odor of alcohol on his breath.
Robertson testified that he then proceeded to administer field sobriety tests to defendant. During the initial test, a horizontal gaze nystagmus test, defendant's eyes did not exhibit smooth pursuit and were jerking. Next, on a walk and turn test, defendant did not walk heel-to-toe as instructed, stepped off the line several times, and was unable to remain on the line. When called to perform the balance test, defendant refused. At that point, Robertson advised defendant that he was under arrest for DWI.
According to Robertson, when he advised defendant of his arrest for DWI, defendant began to move back away from him. Robertson then reached out and grabbed defendant's shirt at the right shoulder, and he told defendant to put his hands on the police unit and that he was going to pat defendant down. At that point, defendant swung at Robertson with his left hand and pulled away from Robertson's grasp. When defendant swung, Robertson ducked and swung toward defendant's punch with his flashlight to block the punch. In doing so, Robertson's flashlight struck defendant once in the back of the head.
Robertson testified that defendant fell down in front of his police unit; but, before he could get in position to cuff defendant, defendant jumped up and ran to the front side of the unit. There, defendant ran his hands down in and out of his front pockets and threw paper money and two small, white, plastic bags in the air. The money *145 and the bags landed on the ground in the grass on the shoulder of the roadway toward the front side of the police unit. Defendant then ran to the passenger side of his car and began yelling to his passenger to get out of the car. Fearing that the passenger might exit the car with a weapon or hand defendant a weapon, Robertson drew his service revolver, pointed it at defendant, and told defendant to raise his hands and come over to his police unit. Defendant complied. Robertson cuffed defendant, put defendant in the back seat of his police unit and called for police backup.
Robertson testified that he then went to the side of his unit and picked up the bags and money defendant had thrown. Next, Robertson ordered Paul Gray, defendant's passenger, to exit defendant's car. Gray cooperated, stepped back to Robertson's unit and placed his hands on the unit as Robertson requested. Shortly thereafter, Trooper Robert Drake arrived at the scene and took custody of defendant and transported him to the Ascension Parish Sheriff's Office. At that point, Robertson radioed State Police Troop A to send a wrecker to tow defendant's car.
Robertson testified that, in the meantime, Gray told him that he was cold and indicated that he wanted to sit in Robertson's police unit. Robertson told Gray he could do so but only after Robertson patted him down for weapons. Robertson patted Gray down and asked that Gray remove his boots. When Gray removed his boots, Robertson asked that Gray turn the boots upside down and shake them. When Gray complied, a small plastic bag of suspected marijuana fell out of one of the boots. Robertson seized the suspected substance, advised Gray he was under arrest for possession of marijuana, cuffed him and placed him inside the back seat area of his police unit.
Robertson testified that, when the wrecker arrived at the scene, it towed defendant's car to the Ascension Parish Sheriff's Office. At the sheriff's office, defendant consented to a search of his car. Subsequently, during the search of defendant's car, Robertson seized a yellow tablet which he found inside the car.
At trial, the state introduced (without objection) State Exhibit S-5, a scientific analysis report of the Louisiana State Police Crime Laboratory. The report revealed that the two small, white, plastic bags contained cocaine, that the plastic bag of suspected marijuana (seized from Paul Gray) contained marijuana and that the yellow pill (seized from defendant's car) contained diazepam.
Defendant presented the testimony of three witnesses at his trial. Those witnesses were Patrick F. Sigur and Carolyn Sigur, his parents, and Paul Gray.
Gray testified that, after he and defendant were stopped and after defendant exited his car, defendant was standing between the rear bumper of his car and the trooper's unit. From inside defendant's car, Gray listened to and observed what was happening between defendant and the trooper. During the field sobriety tests, the trooper asked defendant to "walk the line." At that point, it appeared to Gray that defendant took a couple of steps and "started trying to move forward," when the trooper "grabbed at" defendant. Defendant withdrew, pulling back from the trooper. Gray also testified that the trooper grabbed defendant on the shoulder, spun defendant around and "whopped" defendant over the head with a large flashlight. Defendant fell across the trunk of his car. It appeared to Gray that defendant was trying to get "loose from" the trooper. Gray testified that the trooper hit defendant again. Defendant ran around the car and said: "Paul, he's beating me. He's beating me." According to Gray, defendant never swung at the trooper. The trooper moved back to his police unit and used his radio. Gray said that when he turned around to look again, defendant was at the car's window screaming at Gray. The trooper, said Gray, had his gun on defendant, telling defendant he would have to move back away from the car. Gray testified that the trooper made defendant come around the rear of the car, and the trooper then told Gray to get out of defendant's *146 car and to put his hands on top of the car. Gray complied. The trooper then led defendant around to the driver's side of the police unit. The trooper informed defendant he was under arrest for DWI and that he was going to be handcuffed. According to Gray, while the trooper was patting defendant down, the trooper told defendant to empty his pockets. At that point, defendant threw money up across the hood of the police unit. Thereafter, the trooper put defendant in the rear of his police unit. Gray further testified that, after defendant was placed inside the trooper's unit and after the trooper patted him down, the trooper told him they were going to pick up defendant's money. After the trooper picked up the money and two bags of cocaine, he told defendant that he was also under arrest for possession of cocaine.
Gray admitted that, after another officer came to the scene and defendant was placed in another police unit, he asked the trooper if he could sit inside his police unit to keep warm. At that time, Gray was searched again. Gray testified that the officer opened Gray's wallet, and inside the wallet the officer found a matchbook containing a marijuana cigarette. Subsequently, Gray was searched (a third time); this time his boots were removed. Gray stated that inside the boots he had a "couple of joints worth" of marijuana.
Gray stated that he was with defendant from 10:00 p.m. on the day preceding the traffic stop until the stop and that he did not see defendant drink anything during that entire period. Gray further stated that he would not have gotten into defendant's car if defendant had been intoxicated. According to Gray, defendant absolutely did not stagger, stumble, or sway during the field sobriety tests.
Defendant's parents testified that they went to the Ascension Parish Sheriff's Office on the morning in question. According to each of them, defendant had sustained two head injuries. Defendant's parents also gave testimony indicating that defendant was not intoxicated when they saw him at the sheriff's office on the morning in question.

ASSIGNMENTS OF ERROR NOS. ONE, FOUR, AND FIVE
By means of these assignments, defendant contends that the trial court erred by allowing the state to introduce into evidence the yellow tablet seized from defendant's car (State Exhibit S-6A-1) and the marijuana Robertson seized from Paul Gray (State Exhibit S-6B). Defendant argues that the introduction of these items into evidence was highly prejudicial to him because they were inadmissible "other crimes" evidence.[1]
When the state offered S-6A-1 in evidence, defense counsel objected on relevancy grounds. Thereafter, when S-6B was offered in evidence by the prosecutor, defense counsel again objected on relevancy grounds. Each time, the prosecutor countered that the offered exhibit was part of the res gestae. The trial court overruled defendant's objection to S-6A-1 without stating any reasons for its ruling; in regard to S-6B, the trial court initially sustained defendant's objection. However, the court reconsidered its ruling sustaining the objection and ruled that it would admit S-6B into evidence because defendant's trial counsel had allowed Robertson to testify that he seized marijuana from Gray.
We find that S-6A-1, S-6B, and the testimonial evidence given in regard to the searches and seizures which produced the items of evidence comprising those exhibits were admissible as part of the res gestae. LSA-R.S. 15:447, 448; Cf. State v. Gallow, 452 So.2d 227, 233 (La.App. 1st Cir.), writ denied, 456 So.2d 1016 (La.1984); State v. *147 Bailey, 452 So.2d 756, 760-761 (La.App. 2d Cir.), writ denied, 456 So.2d 161 (La.1984).[2]
These assignments lack merit.

ASSIGNMENTS OF ERROR NOS. TWO AND THREE
By means of these assignments, defendant contends that the trial court erred by allowing the state to introduce Trooper Robertson's police reports, entitled "UNIFORM DWI ARREST REPORT" (State Exhibit S-3) and "INITIAL REPORT/COMPLAINT AFFIDAVIT" (State Exhibit S-4), into evidence. Defendant argues that such reports are inadmissible hearsay and that their introduction into evidence prejudiced him in the eyes of the jury.
Robertson testified that he prepared S-3 and S-4 on April 13, 1988. When the prosecutor offered S-3 into evidence, defense counsel objected to its introduction. Out of the jury's presence, defense counsel stated that parts of S-3 contained hearsay. The court ruled that, with the exception of one sentence in the report (which the court ruled to be hearsay that would be excised from the report), it was admitting S-3 into evidence.[3] The court also ruled that S-4 was admissible.[4]
Notwithstanding that Robertson testified and was available for cross-examination at trial, under the definition of hearsay adopted by the Louisiana Supreme Court in State v. Martin, 356 So.2d 1370, 1373-74 (La.1978), the police reports were inadmissible hearsay. See State v. Johnson, 381 So.2d 436, 438 (La.1980). However, because the content of the reports was cumulative and corroborative of Robertson's trial testimony, the erroneous admission of the reports into evidence is harmless. See State v. Byrd, 540 So.2d 1110, 1114 (La. App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
These assignments lack merit.

ASSIGNMENT OF ERROR NO. SEVEN
By means of this assignment, defendant contends that the trial court erred by denying his motion for new trial. Defendant bases this contention solely on the alleged prejudice he sustained when the prosecutor allegedly referred to "other crimes" evidence during the prosecutor's cross-examination of Paul Gray.
Defendant directs this court's attention to two particular portions of Paul Gray's testimony containing the alleged references to "other crimes" evidence. However, after carefully examining the entirety of Gray's testimony, we find that the record fails to reflect that defendant ever objected to either of these alleged improper references to "other crimes" evidence, nor did he move for a mistrial or ask for an admonition in either instance. Defendant, therefore, has waived any such errors. LSA-C. Cr.P. art. 770; State v. Lucky, 453 So.2d 1234, 1239-1240 (La.App. 1st Cir.), writ not considered, 459 So.2d 529 (La.1984).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. EIGHT
By means of this assignment, defendant contends that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 13, of the Louisiana Constitution.
We note that generally a claim of ineffective counsel is more properly raised by an application for post conviction relief in the *148 district court where a full evidentiary hearing may be conducted. State v. Hicks, 554 So.2d 1298, 1306 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1374-75 (La.1990). However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Hicks, 554 So.2d at 1306.
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland, 104 S.Ct. at 2064.
"If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Strickland, 104 S.Ct. at 2069.
The inquiry must be directed to whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2068. In other words, absent the errors, would the factfinder have had a reasonable doubt concerning guilt. Strickland, 104 S.Ct. at 2068-69. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Strickland, 104 S.Ct. at 2069.
Defendant's claim of ineffective counsel is predicated on several allegations of deficient performance by his trial counsel. The defendant points out the following alleged errors made by trial counsel and argues that these errors resulted in prejudice to the defense:
1. failure of counsel to prevent admission of the evidence found on Paul Gray;
2. failure of counsel to prevent the admission of the police reports; and,
3. failure of counsel to object to the prosecuting attorney's questions referring to "other crimes" allegedly committed by the defendant.
The evidence found on Paul Gray is admissible as part of the res gestae. No prejudice occurred. The police reports were inadmissible hearsay, but the content of the reports was cumulative and corroborative of Trooper Robertson's trial testimony. Therefore, the admission was harmless error.
The last inquiry is whether the failure of trial counsel to object to questions that allegedly referred to "other crimes" prejudiced the defense. During the prosecutor's cross-examination of Paul Gray, Gray testified that he had pled guilty to possession of marijuana based upon the marijuana Robertson had seized from him. Gray stated that he no longer used marijuana; but, in the past, he had used two or three "joints" a week. At that juncture of Gray's cross-examination, Gray was questioned by the prosecutor as follows:
Q. Did you ever get any from Jon Sigur?
A. No, sir.
Q. Never?
A. Never.
Q. Not once?
A. Not once.
Q. Did he ever get any for you from somebody else?
A. No, sir.

*149 Q. Are you positive?
A. Yes, sir.
Defendant argues that the portion of Paul Gray's cross-examination quoted above makes it obvious that the prosecutor was instilling in the minds of the jurors that defendant had sold marijuana in the past. Defendant concludes that this constitutes a reference to "other crimes" evidence which is strictly prohibited by LSA-C.Cr.P. 770. Defendant argues that the prohibited reference would have entitled him to a mistrial if defendant's trial counsel had moved for one. Defendant asserts that the error was serious and resulted in prejudice to the defendant.
After considering the totality of the evidence before the jury, we do not find a reasonable probability exists that, absent the error, the jury would have had a reasonable doubt respecting defendant's guilt. Even an unreasonable error does not warrant setting aside a conviction, if it had no effect on the verdict. State v. Tolliver, 464 So.2d 1088, 1090 (La.App. 1st Cir.1985). The jury was unanimous in its verdict and obviously accepted Trooper Robertson's rendition of the events as credible. We do not agree that the testimony of Gray substantially affected the factual findings of the jury. Every failure to object to a reference, direct or indirect, to "other crimes" will not result in a finding of ineffective assistance of counsel based on an argument that a timely objection and motion may have resulted in a mistrial. See State v. Hicks, 554 So.2d at 1307.
The burden of showing that the decision reached would reasonably have been different absent the error or errors is on the defendant. Strickland, 104 S.Ct. at 2069. The defendant has failed to show sufficient prejudice to meet his burden.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant additionally argues that the search of his car was unlawful because his intoxication precluded his valid consent to the search. However, we note that the record fails to reflect that defendant ever filed a motion to suppress either before or during trial. Accordingly, defendant is precluded from arguing the unconstitutionality of the search and seizure; any objection was waived by the failure to file a motion to suppress. LSA-C.Cr.P. art. 703 F; State v. Lewis, 468 So.2d 557, 559 (La.1985).
[2] The provisions of LSA-R.S. 15:447-448, were applicable and in effect at the time of defendant's trial. They were repealed by Act 515 of 1988 which enacted the Louisiana Code of Evidence effective January 1, 1989. Accordingly, defendant's reliance on provisions of the Louisiana Code of Evidence as support for his arguments pertaining to these assignments and other assignments alleging other trial errors is misplaced.
[3] The record reflects that the excised sentence was as follows: "TFC Drake arrived and placed the accused in his unit and transported him to the Ascension jail, where he refused the intoxilyzer."
[4] After the initial objection and argument to the court, it appears from the record that defendant's trial counsel may have removed his objection to S-4. However, the exchange in the transcript is unclear.