LANIER, Judge.
Huey Price Holiday, a/k/a Robin Hood, was charged by bill of information with illegal possession of stolen things having a value of five hundred dollars or more in violation of La.R.S. 14:69. He pled not guilty and, after trial by jury, was found guilty as charged. Subsequently, defendant was sentenced to imprisonment at hard labor for a term of ten years. This appeal followed.
FACTS
On December 27,1988, Deputy Claude A. Rogers, III, of the Terrebonne Parish Sheriffs Office (TPSO) investigated the burglary of a commercial fishing boat, the Mr. Travis, (owned by Gary Poole) in Chauvin, Louisiana. Rogers went inside the vessel with Poole, who identified four items that were missing from the boat: (1) a Si-Tex[1] EX 7 Loran receiver, (2) A Tri-Star forty channel CB radio, (3) a fifty-five channel President VHF radio, and (4) an Inmor digital depth finder. Poole advised Rogers the burglary had occurred approximately between 5:30 p.m. on December 26, 1988, and 1:30 p.m. the following day. When Rogers asked Poole if he had any serial numbers of the stolen items, Poole indicated that he did not.[2]
Shortly thereafter, TPSO Major Godfrey Buquet received information from an informant that Ronald Ellender had just purchased goods stolen during a burglary. Buquet directed TPSO Deputy Morris Du-plantis to investigate the matter. At about noon on December 28, Duplantis went to Ellender’s home in Montegut, Louisiana. After Duplantis talked to Ellender, Ellen-der brought out a Si-Tex Loran receiver with the serial number 019850. Ellender told Duplantis that he had purchased the Loran receiver from defendant, whom El-lender knew, for twenty dollars.
The state introduced into evidence a canceled check dated December 27, 1988, drawn on Ronald Ellender’s bank account, made payable to the order of cash in the amount of twenty dollars, bearing the signature of Ronald Ellender as drawer and the endorsement of Huey P. Holiday, Jr. on the reverse side of the check. Ellender identified this exhibit as the check he gave defendant in payment for the Loran receiver.
According to Ellender, he purchased the Loran receiver on either December 27 or the following day when defendant came to Ellender’s home and offered to sell him the receiver, a radio which “looked like” a CB radio, and a depth finder. Defendant stated that the items were not “hot” or stolen, and he offered to sell all of them to Ellen-der for about fifty dollars. However, El-lender did not want the other items and chose to purchase only the receiver at the price of twenty dollars.[3]
*527 After obtaining the serial number of the Loran receiver, Duplantis left Ellender’s home and returned to his office. Duplantis contacted several electronics dealerships, including EMT Electronics, Inc., in Houma, Louisiana. Duplantis gave a Mr. Thibo-daux at EMT Electronics the serial number of the Loran receiver, and Thibodaux told Duplantis that Poole had purchased the receiver from EMT. The state introduced into evidence an invoice and a copy of Gary Poole’s check payable to EMT, showing Poole’s purchase of the receiver on April 23,1987, for six hundred thirty-four dollars and forty-four cents.
After determining that the receiver belonged to Poole, Duplantis obtained a warrant for defendant’s arrest. Duplantis also returned to Ellender’s home and retrieved the receiver.[4] On December 29, 1988, defendant was arrested for the instant offense and informed of his constitutional rights.
A few days later on January 3, 1989, TPSO Detective Mike Solet was contacted by Philip Billiot of the City Marshal’s Office, who informed him Elie Hendron wanted to speak to Solet. Hendron then came to the sheriff’s office.
Hendron testified that defendant came into his house on December 28,1988, with a VHF radio and a hand light and offered to sell these items to him for about one hundred dollars. Hendron did not have one hundred dollars. He and defendant started talking about hunting. Ultimately, Hen-dron gave defendant a shotgun in return for the radio and light. Hendron testified that, at the time of this transaction, he believed that defendant owned the items.
Thereafter, on the following morning, Hendron received a telephone call from jail. The caller identified himself as defendant, and Hendron recognized defendant’s voice. During the telephone conversation, defendant told Hendron that the items Hendron had received in exchange for the shotgun were “hot” and not to turn them in to the police. Instead, defendant told Hendron that he wanted them back, that he wanted Hendron to bring them “back of K-mart”, and that he would send someone to get the items. Hendron became frightened after receiving the call from defendant and spoke to his neighbor, Phillip Billiot, who advised Hendron to bring the items to the (Sheriff’s) office.[5]
The defense consisted of the testimony of one witness, Michael Johnson, who stated that he and defendant were lifelong friends. According to Johnson, he took a ride with defendant in defendant’s father's truck on approximately December 27, 1988. Defendant pulled up to a gas pump at a store in Chauvin. There was a man, a woman and two young children in a truck on the opposite side of the pump. These people were “real filthy”. The man had a “whole bunch of stuff” in the truck, “a lot of pillow cases, sacks, a couple of tables and stuff like that”, giving the appearance that the man and the people with him were moving. Johnson saw the man talking to defendant and saw defendant purchase some items from the man. Johnson stated that he loaned defendant ten dollars so defendant could pay the man the fifty dollars that the man wanted for the items. Johnson observed the man give defendant a sack which contained boxes and what looked like a CB radio. Johnson testified that the transaction occurred on about December 27, at between approximately 10:30 a.m. and 11:00 a.m. Johnson did not look inside the boxes and did not know what was in them. When the state introduced copies of the payroll records from the Bourg Dry Dock, Johnson’s place of employment, showing that Johnson was at work for seven and one-half hours on December 27, Johnson stated that he was not sure of the exact date the transaction had occurred and admitted that it had not occurred on December 27. However, he stated that he was “absolutely sure” he was *528 with defendant when defendant purchased the items.

INEFFECTIVE ASSISTANCE OF COUNSEL

(Assignment of error 3)[6]
In this assignment of error, the defendant states the following:
The defendant assigns as error any errors patent on the face of the record, including but not limited to the following. A motion for mistrial should have been requested and granted when the prosecutor made reference, during defendant’s closing argument, to the defendant’s failure to take the witness stand.
In brief, defendant contends that the essence of this assignment of error “is an assertion that trial counsel was ineffective.”
The transcript shows that during the closing argument of defendant’s trial counsel, the following occurred:
And I believe that you know the economic situation at Terrebonne Parish. You can visualize a family, person unemployed with kids, hungry and a man, Mr. Holiday who is known as Robin Hood, wanting to help out a poor destitute family. Robin Hood. That’s what he is called, Robin Hood.
And how did he get that name Robin Hood?
MR. RHODES [the prosecutor]:
I am going to object to that, Your Honor. If Mr. Holiday wanted to take the stand and explain his [sic] origin of his name sake, he could of done so. It’s improper to argue what [sic] evidence that has not been admitted.
THE COURT:
Objection sustained:
MR. RHODES:
Thank you.
MR. WALLIS [the defense counsel]:
Mr. Holiday was concerned about this poor family that he saw. ‘Cause he had it here in his heart. That’s why he purchased these goods. He didn’t know he was going to get in trouble today. He didn’t know he would have to come to trial cause he was trying to help somebody out.
The defendant now asserts that the prosecutor’s remark is an impermissible reference to his failure to testify in his own defense in violation of La.C.Cr.P. art. 770(3). The transcript shows that counsel for the defendant did not object to the prosecutor’s statement and did not move for a mistrial. La.C.Cr.P. art. 841(A) provides as follows:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
Because counsel for the defendant did not contemporaneously object or move for a mistrial, any error involved has been waived.
The error asserted by the defendant is not a patent error. Pursuant to La.C.Cr.P. art. 920(2), a patent error is “An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.” In State v. Knight, 536 So.2d 589, 594 (La.App. 1st Cir.1988), this court observed as follows:
For purposes of a patent error check, the record includes the caption, the statement of time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the mentioning of the impaneling of the jury, the verdict, the judgment of sentence, the bill of particulars filed in connection with a short form indictment or information, and, in a capital case, a minute entry indicating that the jury had been sequestered.
*529 The error asserted by the defendant can be found only by an inspection of the transcript of the trial, and, accordingly, it is not a patent error.
The defendant now contends that the failure of his counsel to object to the prosecutor’s remark and/or move for a mistrial pursuant to La.C.Cr.P. art. 770(3) constituted ineffective assistance of counsel sufficient to justify a reversal of his conviction.
The appropriate avenue for asserting a claim for ineffective assistance of counsel is through an application for post-conviction relief, not by direct appeal. See State v. Truitt, 500 So.2d 355 (La.1987); State v. Brown, 384 So.2d 983 (La.1980); State v. Robertson, 310 So.2d 619 (La.1975). The reason for this rule is to provide for a full evidentiary hearing on the allegations of ineffective assistance. State v. Barnes, 365 So.2d 1282 (La.1978); State v. Newsome, 534 So.2d 87 (La.App. 3rd Cir.1988), writ denied, 540 So.2d 327 (La.1989). Where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and the issue is raised by an assignment of error on appeal, the appellate court may exercise its discretion and address the issue. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Hicks, 554 So.2d 1298 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1374 (La.1990); State v. Bourgeois, 451 So.2d 172 (La.App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984). The evidence in this case is insufficient for an adequate review of this issue. This issue has been raised for the first time in this court. This issue was not addressed in an evidentiary hearing or at a motion for new trial in the trial court as in Ratcliff and Bourgeois.
Trial counsel’s failure to make an objection at trial may, in hindsight and on first impression, appear to have been error. However, trial counsel may have had sound reasons for not objecting during trial. Because there was no evidentiary hearing, the record does not contain counsel’s reasons for not objecting. The reason why trial counsel failed to object to the alleged error could be essential evidence for either the State or the defendant, and it is evidence the trial court could receive and evaluate on this issue. Further, it is possible that an evidentiary inquiry into the intent of the prosecution in making the statement may be necessary. State v. Johnson, 541 So.2d 818, 822-823 (La.1989). Finally, in the procedural posture of this case, if we consider the ineffective assistance of counsel claim, we will, as a practical matter, render La.C.Cr.P. arts. 841 and 920 meaningless. Accordingly, we decline to exercise our discretion to consider the ineffective assistance of counsel claim.
This assignment of error is without merit.
SUFFICIENCY OF THE EVIDENCE
(Assignment of error 4)
Defendant asserts the jury’s verdict is contrary to the law and the evidence. He contends a review of all the evidence shows no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.
Pursuant to La.C.Cr.P. art. 821, when reviewing a sufficiency of the evidence claim, an appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
The crime of illegal possession of stolen things is defined in La.R.S. 14:69(A) as follows:
Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Thus, there are three elements of the crime: (1) intent, (2) possessing, procuring, receiving, or concealing stolen goods, and (3) knowledge the goods were stolen. *530 State v. Mangrum, 509 So.2d 818 (La.App. 1st Cir.1987).
In finding defendant guilty, it is obvious the jury credited the testimony of the state’s witnesses and rejected the testimony given by defendant’s witness. The credibility of a witness’ testimony is a matter of the weight of the evidence. A determination of the weight of the evidence is a question of fact, not subject to appellate review. State v. Tate, 506 So.2d 546 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). After carefully considering all of the evidence, both direct and circumstantial, in the light most favorable to the state, we hold that a rational trier of fact could find the evidence proved beyond a reasonable doubt that defendant committed the instant offense.
This assignment of error is without merit.
EXCESSIVENESS OF SENTENCE
(Assignment of error 5)
Defendant contends that the trial court erred by imposing an excessive sentence.
Excessiveness of a sentence is reviewable. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Hawkins, 496 So.2d 643 (La.App. 1st Cir.1986), writ denied, 500 So.2d 420 (La.1987). In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, 367 So.2d at 767. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether or not a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). Maximum sentences are imposed for the most serious violations of the described offense and for the worst kind of offender. State v. Tate, 506 So.2d at 552; State v. Leason, 477 So.2d 771 (La.App. 1st Cir.1985). Because of the wide discretion afforded the trial court in imposing sentence, a sentence within statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Payne, 540 So.2d 520 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
A trial court’s reasons in imposing sentence, as required by La.C.Cr.P. art. 894.1, are an important aid to this court when reviewing a sentence alleged to be excessive. State v. Hicks, 554 So.2d 1298 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1374 (La.1990). The trial court need not recite the entire checklist found in La.C.Cr.P. art. 894.1. However, the record must reflect that the court adequately considered the guidelines. State v. Davis, 448 So.2d 645 (La.1984). Even when the trial court has not complied with La.C.Cr.P. art. 894.1, this court need not remand the case for resentencing unless the sentence imposed is apparently severe in relation to the particular offender or the offense committed. State v. Carr, 530 So.2d 579 (La.App. 1st Cir.), writ denied, 533 So.2d 354 (La.1988).
La.R.S. 14:69(B)(1) provides that illegal possession of stolen things valued at five hundred dollars or more is punishable by imprisonment, with or without hard labor, for a maximum of ten years and/or a fine of not more than three thousand dollars. The defendant received the maximum term of imprisonment at hard labor; no fine was imposed.
Prior to sentencing, the trial court asked defendant if he wanted to say anything. Defendant’s trial counsel responded by asking the court for leniency. To support the request, counsel stated that defendant, who has been on probation, has a family, that defendant has been “out of trouble” since 1985, and that defendant is trying to “go straight” and change his life.
In imposing the sentence, the trial judge stated he had defendant’s “rap sheet”, and stated: “[Defendant] has another conviction in 1983 for Receiving Stolen Things, *531 1981 Simple Burglary. You can see how long the list is. It’s two feet long.” The trial judge stated he felt there was an undue risk that during a period of suspended sentence that defendant would commit another crime. The court noted that defendant was in need of correctional treatment or a custodial environment that could be provided most effectively by defendant’s commitment to an institution and that any lesser sentence would deprecate the seriousness of defendant’s crime. Thereafter, the court stated that for all the foregoing reasons coupled with defendant’s past record of “just stealing and stealing and stealing”, the maximum sentence was being imposed for the instant offense.
Under the circumstances of this case and in light of the sentencing reasons articulated by the trial court, we are unable to say that the trial court abused its discretion.
This assignment of error is without merit.
PATENT ERROR
Under the authority of La.C.Cr.P. art. 920(2), this court routinely reviews appellate records for patent error. After reviewing the record, we have discovered a patent sentencing error; the trial court failed to give defendant credit for time served. La.C.Cr.P. art. 880. Accordingly, we amend the sentence to reflect that defendant is to be given credit for time served prior to execution of the sentence. See State v. Greer, 572 So.2d 1166 (La.App. 1st Cir.1990).
Resentencing is not required. However, we remand the case and order the trial court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served on the sentence.
DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED; REMANDED WITH INSTRUCTIONS.

. In the transcript, the Loran receiver is called “Sytech".

. Rogers testified that he never found out who committed the burglary.

. Ellender testified that he was not sure the items were not stolen and suspected they might be stolen. He further testified that he bought the receiver because a Loran receiver had been stolen from his brother’s boat and he wanted to determine whether or not the receiver he purchased from defendant was the one taken from his brother’s boat. Ellender indicated that he did not contact the police because he first wanted to check with his brother to see if the receiver was the one stolen from his brother’s boat. According to Ellender, he was neither arrested nor charged for illegal possession of stolen things in connection with his possession of the receiver.

. The receiver was photographed to allow the police to return it to Poole. The photograph was introduced into evidence by the state.

. Hendron testified that he was not arrested for illegal possession of stolen things in regard to the items he received from defendant as part of the exchange.

. The defendant expressly abandoned assignments of error 1 and 2 in his appellate brief.